**WAYSIDE FARM, INC., et al.,**
**Plaintiffs–Appellees,**

v.

The **UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES;** William L. Roper, in his official capacity as Administrator, Health Care Financing Administration; Barbara Gagel, in her official capacity as Regional Administrator, United States Department of Health & Human Services; Chester C. Stroyny, in his official capacity as Associate Regional Administrator, Division of Health Standards & Quality Health Care Financing Administration, United States Department of Health & Human Services; David Wells, in his official capacity as Former Chief of the Survey and Certification Operations Branch of the Division of Health Standards and Quality, Health Care Financing Administration, United States Department of Health and Human Services; The Ohio Department of Human Services; Patricia Barry, in her official capacity as Director, Department of Human Services, Defendants–Appellants.

No. 87–3826.

United States Court of Appeals,
Sixth Circuit.

Argued July 21, 1988.
Decided Dec. 13, 1988.

Michael Anne Johnson, Asst. U.S. Atty. (argued), Cleveland, Ohio, for defendants-appellants.

Dennis A. Roth, Roth & Roth, Carol Rolf, Timothy N. Toma, David D. Noble, (argued), Cleveland, Ohio, for plaintiffs-appellees.

Before MARTIN and WELLFORD, Circuit Judges, and JARVIS, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

The United States Department of Health and Human Services appeals the order of the district court enjoining the department from terminating plaintiff Wayside Farms, Inc., from its Medicaid funding and provider agreement. The issue before us, one of first impression, is whether the Secretary may discontinue Medicaid benefits to an intermediate care nursing facility subsequent to a determination by an administrative law judge that the facility was not in compliance with Medicaid provider requirements but prior to a review by the Appeals Council. Upon review, we conclude that the Secretary may discontinue Medicaid benefits in certain circumstances.

The relevant facts in this case are straightforward and undisputed. Plaintiff Wayside Farm is an Ohio corporation that operates a nursing home certified as an intermediate care nursing facility. It is also licensed by the State of Ohio as a mild mental nursing home and as a regular nursing home. The State of Ohio first entered into a provider agreement with Wayside, a requirement for participation in the federal state funded Medicaid program, in 1972.

The Medicaid program is administered by states that choose to participate and that develop Medicaid plans consistent with federal statutory and regulatory requirements. 42 U.S.C. § 1396. Once a state has secured approval of its plan from the Secretary, the state is entitled to federal funds to match state expenditures in making payments for covered services provided to eligible individuals. 42 U.S.C. § 1396b(a). Pursuant to the Medicaid pro-gram, a state may fund with federal financial assistance those services furnished in an "intermediate care facility." 42 U.S.C. § 1396d(a)(15). Such a facility, licensed under state law, provides on a regular basis health-related care and services to those who do not need the full care and treatment typically provided by a hospital but who do require care and services amounting to more than room and board. As part of the Medicaid program's requirements, such facilities must also meet the health and safety standards prescribed by the Secretary. 42 U.S.C. § 1396d(c).

The Secretary has promulgated detailed regulations setting forth the specific certification requirements for intermediate care facilities. Among the requirements are that the facilities employ a sufficient staff twenty-four hours a day, have adequate training programs, maintain sufficient medical records, establish an overall plan of care for patients, provide nutritionally adequate and hygienic meals, satisfy various safety codes, and follow specified practices regarding medications. *See* 42 C.F.R. § 442.300 *et seq.* Only if the facility has obtained its state agency's certification that it has met these requirements and thus qualifies as an intermediate care facility may the facility enter into a "provider agreement" with the state entitling it to reimbursement for providing covered services to Medicaid recipients. 42 C.F.R. § 442.150.

Wayside was first certified in 1972. Since that year, Wayside's certification to provide care to Medicaid recipients has been continually renewed annually by the state. At the time of the district court's decision below, sixty of Wayside's ninety-four residents received Medicaid assistance, and five of the privately-paying residents had pending applications for Medicaid assistance.

In 1980, Congress took action to allow the Secretary to make "independent and binding determinations," based upon his own surveys, as to whether facilities that had been participating as Medicaid interme-

---

[*] The Honorable James H. Jarvis, United States District Judge, United States District Court, Eastern District of Tennessee, sitting by designation.

diate care facilities actually met federal requirements. 42 U.S.C. § 1396a(a)(33)(B). Section 916(b)(2) of the Omnibus Reconciliation Act of 1980, Pub.L. 96–499, also added a new section 1910(c) to the Social Security Act, 42 U.S.C. § 1396i(c), to empower the Secretary to cancel a facility's Medicaid agreement with the state at anytime if he finds, on the basis of his independent determination, that the facility does not meet federal standards. In effect, this provision allows the Secretary to "look behind" a state agency's certification.

On May 28–30, 1985, a team of health professionals from the Department of Health and Human Services' Health Care Financing Administration surveyed Wayside pursuant to this "look behind" authority. This survey was undertaken after a state agency employee complained to the Health Care Financing Administration that the state was unwilling or unable to enforce Medicaid requirements at that facility. On August 30, 1985, officials notified the State of Ohio and Wayside that, as a result of deficiencies found during the onsite federal survey, the facility's Medicaid agreement would be cancelled effective November 1, 1985. This notification took place pursuant to 42 U.S.C. § 1396i(c)(1).

Not satisfied with the determination made by the Health Care Financing Administration, Wayside sought a hearing before the Secretary pursuant to 42 U.S.C. § 1396i(c)(2). A full evidentiary administrative hearing was then held before an administrative law judge on August 12–26, 1986. On May 14, 1987, the administrative law judge upheld the Health Care Financing Administration's determination to cancel Wayside's Medicaid provider agreement. The administrative law judge concluded that the cancellation determination was warranted by significant deficiencies, including the misadministration of medications, the failure to have any policy on chemical and physical restraints, the inadequate training of staff, the absence of active treatment for mentally retarded residents, and the preparation of unhygienic food. Wayside was then notified by letter that it was terminated from the Medicaid program as of the date of the administra-

tive law judge's decision, May 14, 1987. Federal funding, however, would continue for thirty days until June 14, 1987. This letter of notification informed Wayside that, if it was "of the opinion that [the] facility currently meets federal statutory and regulatory requirements for participation in the Medicaid program, [it] may reapply for participation in the program." Wayside was also informed that it would not be reinstated unless the Health Care Financing Administration determined that the reasons for the termination had been removed and that there was no real likelihood that the problems would recur. Finally, Wayside was informed that "any request for appeal will not affect the effective date of termination."

On June 2, 1987, Wayside filed its administrative appeal from the administrative law judge's decision and initiated this lawsuit in district court to enjoin the Secretary from terminating its Medicaid funding until it could exhaust its administrative remedies. The district court granted Wayside's request for equitable relief. The Secretary now appeals that decision.

█ Before we turn to the substantive merits of the Secretary's arguments, we first address the Secretary's contention that plaintiffs failed to exhaust their administrative remedies before turning to the courts. Specifically, the Health Care Financing Administration asserts that Wayside must be required to exhaust available administrative remedies and await the Appeals Council's review, during which time Wayside's reimbursement would be terminated, before it seeks judicial review. This argument would have some merit if Wayside were in fact asking us to review the determination of the administrative law judge. In a situation such as that, we will not undertake judicial review until there has been a "final decision" by the Secretary. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Here, however, Wayside seeks judicial review not of the administrative law judge's determinations, but review of the decision of the Secretary to terminate the provider agreement prior to a decision by the Appeals

Council. The issue before this court concerns the continuation of benefits pending administrative review and is, we believe, entirely collateral to Wayside's substantive claim for certification. Wayside's claim for continued Medicaid participation under section 1396i(c)(2) is not and will not be the subject of its administrative appeal to the Appeals Council. Accordingly, we believe the issue before this court to be entirely collateral to that being presented to the Appeals Council. We reject the Secretary's argument that the effect of the district court's decision, which had enjoined the termination of the Medicaid agreement until the Appeals Council could act, demonstrates that Wayside's claims before the court were intertwined with, rather than collateral to, its substantive claim to continued certification in the Medicaid program. This argument rests on the premise that, because the district court's decision has the same effect of continuing the Medicaid provider agreement as would an administrative determination that Wayside meets the federal requirements for certification, the two claims must be intertwined. Such reasoning ignores the fundamental differences between the two. The issue before the Appeals Council will be resolved on the basis of the specific facts surrounding Wayside's facilities. The question before us is strictly a legal one, which is not impacted in any way by the Secretary's factual conclusions on the question of certification. Furthermore, the question before us goes to the scope of the Secretary's power, not to the merits of the administrative law judge's findings.

As was the case in *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed. 2d 462 (1986), we have before us a claim by plaintiffs that is entirely collateral to those presented before the administrative agency. In *City of New York*, the Supreme Court found that factor, as well as the fact that no purpose would be served by requiring plaintiffs to pursue an administrative review process with respect to the issue presented to the court, important in ruling that plaintiffs were not required to exhaust their administrative remedies. Similarly, we will not be aided in our efforts to dis-

cover the scope of the Secretary's power to terminate Medicaid provider agreements by requiring Wayside to secure the Appeals Council's review on the certification question. And like the disabled worker whose disability benefits were terminated in *Mathews v. Eldridge, supra,* and the mentally impaired claimants in *City of New York* who sought disability and other benefits, Wayside is heavily dependent upon the receipt of federal Medicaid funds. This reliance also supports our conclusion that immediate review is warranted here. That Wayside may possess political influence does not undermine the fact that the termination of its Medicaid provider agreement could well signal the end for the Wayside facility. We believe these factors indicate that this is the type of unique situation where a court may waive the requirement that administrative remedies be exhausted. It should be emphasized that these factors here only have the effect of allowing Wayside to present its statutory argument to us without exhausting its administrative remedies; these factors do not impact the ultimate analysis of whether Wayside was correct that the Secretary erred in terminating the Medicaid provider agreement prior to a final decision by the Appeals Council. We turn now to that question.

■ This case calls on us to interpret 42 U.S.C. § 1396i(c)(2). That section provides:

Any skilled nursing facility or intermediate care facility which is dissatisfied with a determination by the Secretary that it no longer qualifies as a skilled nursing facility or intermediate care facility for purposes of this subchapter, shall be *entitled to a hearing* by the Secretary to the same extent as is provided in section 405(b) of this title *and* to *judicial review of the Secretary's final decision* after such hearing as is provided in section 405(g) of this title. Any *agreement* between such facility and the state agency *shall remain in effect until* the period for filing a request for a hearing has expired or, if a request has been filed, until *a decision* has been made by the Secretary.... (emphasis added).

Here, a decision was made that Wayside no longer qualified as an intermediate care facility. After failing to persuade the administrative law judge to overturn that decision, Wayside was notified by the Secretary that its provider agreement would be terminated. Wayside argues that the language of the statute that describes the time frame for when an agreement may be terminated, "until a decision has been made by the Secretary," means a final decision after all administrative appeals are exhausted. The Secretary interprets this language differently to mean that the point in time when the provider agreement terminates is upon the administrative law judge's decision rendered after a hearing. The district court rejected the Secretary's interpretation of "a decision" to mean the hearing decision and instead held that the decision mentioned must be the "final agency decision."

The statutory provision at issue here essentially provides for three tiers of agency action: (1) the Secretary's initial determination of noncompliance; (2) the Secretary's decision following a hearing; and (3) the Secretary's final decision. As a prerequisite to judicial review, the statute explicitly requires a "final decision." The provider agreement may be terminated, on the other hand, after there has been "a decision."

We believe the plain language of the statute provides powerful support for the Secretary's position. The key sentence, which describes when a provider agreement may be terminated, does not contain the term "final decision." When the statute addresses the subject of judicial review, however, it does specifically state that a "final decision" is necessary. The Secretary's argument is especially powerful here because Congress throughout the Social Security Act made clear when a "final decision" was required. We agree that if Congress had intended for the provider agreement to continue until a final decision was reached, it should have said so. That Congress used the specific term "final decision" in other contexts suggests that Congress knew what it was doing and should not be presumed to have committed an oversight by omitting that term in the con-

text of terminating provider agreements. In that situation, all that is required by the statute is that there be "a decision" by the Secretary. Here, there has been a decision, although not a "final decision."

This court does not have to rely upon the plain language and *expressio unius* canons of statutory interpretation alone. Because we are reviewing an agency interpretation of a statute which it has primary responsibility for interpreting, we are obligated to follow the basic framework established by the Supreme Court in *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed. 2d 694 (1984), where the Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43, 104 S.Ct. at 2781–82. The Supreme Court goes on to add that it has "long recognized a considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principal of deference to administrative interpretations." *Id.* This is especially the case when an interpretation of a statute involves the reconciliation of conflicting policies. This court, too, has made clear that an agency's construction of the statute which the agency is charged with administering is entitled to "considerable weight." In *National Steel Corp. v. Gorsuch*, 700

F.2d 314, 321 (6th Cir.1983), we noted that it was "not necessary that the agency's construction of the statute be the only permissible one. Rather, its construction 'must be upheld unless that view is plainly *unreasonable.*'" (emphasis in original). We believe the Secretary's interpretation of 42 U.S.C. § 1396i(c) is certainly reasonable. The Secretary's interpretation provides the best protection for Medicaid residents, the intended beneficiaries of the Medicaid program. This interpretation of the statute also provides a reasonable balancing of the policies of protecting the health of residents while minimizing the possibility of needlessly forcing the closing of nursing facilities.

We also believe that the Secretary's interpretation of section 1396i(c)(2) is entitled to deference because of the Secretary's longstanding and consistent interpretation of that statute. At 42 C.F.R. § 498.5, published on June 12, 1987, the Secretary formally interpreted the statutory provision to mean that a facility's participation in the Medicaid program would terminate upon issuance of a hearing decision. Because the regulations confirmed the Secretary's pre-existing position and operate as an interpretive rule, they are not subject to the Administrative Procedure Act's notice and comment requirements. *McCown v. Secretary of Health and Human Services,* 796 F.2d 151 (6th Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). When these regulations were promulgated on June 12, 1987, the Secretary wrote:

> These rules clarify and update content that deals with procedural rather than substantive aspects of the Medicare program. They conform that content with practices that are already in effect and are not intended to make any substantive change, except as required by change in the delegation of authority. Accordingly, we find that notice and delayed effective date are unnecessary.

52 Fed.Reg. 22,445 (1987).

Though this regulation was formally published on June 12, 1987, and Wayside's lawsuit was filed on June 2, 1987, we have no doubt that the Secretary's promulgation of this regulation was not, as Wayside apparently contends, in anticipation of litigation. The government bureaucracy being what it is, we have no hesitation in accepting the Secretary's characterization of Wayside's suggestion that the government could formulate, approve and publish a regulation within ten days of the filing of a lawsuit as nothing less than "implausible." Because the Secretary's interpretation has been consistent, is based on the plain language of the statute, and is in accordance with the applicable legislative history, we believe that deference should be shown to that interpretation.

Finally, our conclusion that the Secretary may terminate benefits after the administrative law judge's determination but prior to that of the Appeals Council draws further support from the legislative history. The legislative history accompanying the Omnibus Reconciliation Act, which contains the relevant statutory provisions, discusses how the Secretary may, after a facility has failed to meet applicable requirements, terminate the facility's participation in Medicaid. The question of the timing of the termination was addressed specifically when Congress stated that "termination could not take effect until the affected facility had been provided an opportunity for a hearing on the Secretary's determination that it failed to meet the requirements for participation." H.R.Rep. No. 86–1167, 96th Cong., 2nd Sess. 57, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5526, 5570–71. This provision provides direct unequivocal support for the Secretary's determination that it may terminate Wayside's provider agreement prior to a review of the administrative law judge by the Appeals Council. Nowhere does Congress suggest that such facilities must be permitted the opportunity to exhaust all available administrative remedies before cancellation of the provider agreements. Indeed, allowing the Secretary to terminate such agreements upon an administrative law judge's finding of non-compliance furthers Congress' expressed intent of assuring that federal funds go "only to those ... [intermediate care facilities] that actually comply with Medicaid

requirements." H.R.Rep. No. 86–1167, 96th Cong., 2nd Sess. 57, *reprinted in* 1980 U.S.Code Cong. & Ad.News 5570.

We do not believe the legislative history or statutory language concerning the Secretary's power to impose an intermediate or alternative sanction lead to a contrary conclusion. The "intermediate sanction" provisions are separately codified from the "look behind" authority. The Secretary's "intermediate sanction" authority is part of the Medicare title of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and applies only to skilled nursing facilities. 42 U.S.C. § 1395cc(f).[1] The state Medicaid agencies' "look behind" authority, which also allows them to impose alternative sanctions in the case of Medicaid intermediate care facilities like Wayside, on the other hand, is codified at 42 U.S.C. § 1396a(i)(1). The Secretary, however, does not possess this alternative sanction authority in the case of such Medicaid facilities. Thus, we believe the district court erred in relying upon the language of the alternative sanction authority and its legislative history since the "look behind" provision of the Medicaid statute makes no mention of any alternative sanction authority and such alternative sanctions are permitted only in the case of a skilled nursing facility.

We hold, therefore, that the Secretary may terminate a facility's Medicaid provider agreement before the facility has had an opportunity to challenge the administrative law judge's determinations before the Appeals Council. This result has been reached on the basis of the plain language of the statute, the relatively unambiguous legislative history, and the need to show deference to an agency interpretation of a statutory provision that is both longstanding and reasonable. The potential impact on any facility of being terminated from such a Medicaid provider agreement is minimal, given that the facility can immediate-ly reapply for participation in the program if it can show that it meets federal requirements and that it is not likely that the previous problems will recur. If it cannot meet these requirements, then Congress has made it clear that such facilities are not to receive federal funds.

Accordingly, the decision of the district court is hereby reversed.

WELLFORD, Circuit Judge, concurring.

I fully concur in Judge Martin's able discussion and interpretation of 42 U.S.C. § 1396i(c)(2) to the effect that the Secretary may, under circumstances of this case, terminate Wayside's Medicaid provider eligibility before the Appeals Council has ruled upon the ALJ's determination, which was adverse to Wayside following a full hearing. I agree that the district court's issuance of an injunction must therefore be reversed.

I write separately to emphasize the statutory scheme which has afforded full due process to a provider such as Wayside before termination of its status as a Medicaid provider as an "intermediate care facility." Wayside, which calls itself in its complaint a " 'mild mental' nursing home," provides health care services, but after an inspection by the Secretary and a full evidentiary hearing on the findings of the inspectors, it was determined that serious deficiencies existed in the delivery of nursing and health care, including improper administration of medications, and a number of other such problems. As a consequence, the Secretary determined that the facility agreement should have been cancelled on November 1, 1985. Due to delays occasioned by the administrative process on appeal from this decision, although it was affirmed in important particulars by the ALJ, federal funding was not ordered to be terminated until June of 1987, *more than two*

---

1. 42 U.S.C. § 1395cc(f) provides:

    (1) Where the Secretary determines that a skilled nursing facility . . . no longer substantially meets the provisions of section 1395x(j) [42 U.S.C. § 1395], and further determines that the facility's deficiencies—

    . . . .

    (B) do not immediately jeopardize the health and safety of its patients, the Secretary may, in lieu of terminating the agreement or certification of the facility, provide

that no payment shall be made under this title . . . with respect to any individual admitted to such facility after a date specified by him.

**454**

*years* after the on-site inspection and findings of substantial deficiencies in operation. Wayside, moreover, was advised before the proposed termination that if it felt that it had corrected the deficiencies so as to meet federal Medicaid standards it was free to reapply. During all this time, Wayside continued to receive Medicaid reimbursements.

Instead, without seeking to reapply, and/or without showing that it had petitioned administratively for a stay based on corrective steps to bring Wayside into conformity, plaintiff appealed administratively to the Appeals Council and instituted an action in district court to enjoin implementation of the Secretary's actions which was clearly authorized under the statutory scheme. Under these circumstances, in my view, Wayside had failed entirely to show a basis for extraordinary relief and interruption of the statutory process. Absent some effort other than appeal to the Appeals Council, to show that the applicant had submitted a reapplication and some evidence of its present compliance with Medicaid standards, or correction of noted deficiencies, I believe the district court should decline to consider the request for extraordinary relief. A mere assertion that cancellation of the Medicaid provider agreement would bring about a temporary displacement of some patients or a financial burden upon the health care provider would be insufficient to warrant district court intervention in my view. Extraordinary and unusual circumstances only would justify a provider's seeking intervention by federal courts during the administrative process directed by the congress.

I concur in the reversal of the injunctive order issued by the district court.