**CLARIDGE HOUSE, INC. d/b/a Mt. Vernon Nursing Home, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants.**

No. C–2–91–851.

United States District Court, S.D. Ohio, E.D.

Nov. 12, 1991.

Thomas Wilson Hess, Buckingham, Doolittle & Burroughs, Columbus, Ohio, for Claridge House Inc.

James Evan Rattan, U.S. Attorney's Office, Columbus, Ohio, for Department of Health and Human Services, Louis M. Sullivan, M.D.

Karen L. Lazorishak, Ohio Atty. Gen., Columbus, Ohio, for Charles Bennett, Ohio Dept. Human Serv.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

This matter is before the Court on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss. The parties have agreed that there are no material facts in dispute and that the issues raised in these motions concern solely questions of law. Oral argument on these motions was held before this Court on Monday, October 28, 1991.

## I. BACKGROUND

Claridge House, Inc. d/b/a Mt. Vernon Nursing Home ("Mt. Vernon") is a facility in Knox County, Ohio, certified to provide intermediate care nursing services. Defendant Louis Sullivan, M.D. is the Secretary of defendant United States Department of Health and Human Services ("HHS"), which is responsible for the administration of the Medicaid program, Title XIX of the Social Security Act. Defendant Charles Bennett is Branch Chief, Survey and Certification Operations Branch, of the Division of Health Standards and Quality, Health Care Financing Administration, Region V, ("HCFA") which supervises Ohio's Medicaid program. Defendant Terry A. Wallace is Director of defendant Ohio Department of Human Services ("ODHS"), the state agency responsible for Ohio's medical assistance plan administration and which is authorized to enter into provider agreements with nursing homes providing intermediate care nursing services and which assists in placing qualified recipients into nursing homes.

In May 1991 HCFA surveyed Mt. Vernon, pursuant to 42 U.S.C. § 1396r(g)(3),[1] as part of the facility's participation in the Medicaid program. Mt. Vernon subsequently was notified of deficiencies found by the HCFA survey that could cause decertification of the facility. Mt. Vernon submitted a plan of correction in response to HCFA's findings; that plan of correction was rejected by HCFA. After submitting a revised plan of correction, HCFA surveyors performed another review of Mt. Vernon on August 19–21, 1991. In a letter to Mt. Vernon on September 18, 1991 HHS

announced that it was canceling Mt. Vernon's Medicaid provider agreement because of deficiencies that limited Mt. Vernon's capacity "to render adequate care and to ensure the health and safety" of its residents. (Plaintiff's Complaint, Exhibit "A".) Mt. Vernon's provider agreement was to be terminated on October 10, 1991. Mt. Vernon was given sixty days to request a hearing before an administrative law judge to review the HHS decision.

Plaintiff brought this action in this Court on October 9, 1991, seeking a temporary restraining order, preliminary and permanent injunctive relief, and declaratory judgment. In the motion for a temporary restraining order plaintiff sought an order enjoining defendants "from terminating payments or refusing to make payments to MT. VERNON for covered services rendered to Medicaid-eligible patients" and "from denying admission to MT. VERNON of Medicaid-eligible recipients." After a conference with the parties on October 9, the Court found an immediate and real danger of irreparable injury, loss and damage to Mt. Vernon and categorical recipients of Medicaid residing at Mt. Vernon if its Medicaid provider agreement would be terminated on October 10. A resurvey also was being conducted at Mt. Vernon on October 7–10, 1991. Plaintiff's request for a temporary restraining order was granted to the extent that defendants were enjoined "from terminating payment or refusing to make payment to Mt. Vernon for covered services rendered to Medicaid-eligible patients ... who now reside at Mt. Vernon." (Memorandum and Order, filed October 9, 1991.) Defendants filed a motion to dis-

---

1. Section 1396r(g)(3) provides in pertinent part:

(3) Validation surveys

(A) In general

The Secretary shall conduct onsite surveys of a representative sample of nursing facilities in each State, within 2 months of the date of surveys conducted under paragraph (2) by the State, in a sufficient number to allow inferences about the adequacies of each State's surveys conducted under paragraph (2). In conducting such surveys, the Secretary shall use the same survey protocols as the State is required to use under paragraph (2). If the State has determined that an individual nursing facility meets the

requirements of subsections (b), (c), and (d) of this section, but the Secretary determines that the facility does not meet such requirements, the Secretary's determination as to the facility's noncompliance with such requirements is binding and supersedes that of the State survey.

(B) Scope

With respect to each State, the Secretary shall conduct surveys under subparagraph (A) each year with respect to at least 5 percent of the number of nursing facilities surveyed by the State in the year, but in no case less than 5 nursing facilities in the State.

miss. The Court's order was extended for ten days after a meeting with the parties' counsel on October 18, 1991.

A preliminary injunction hearing was held before this Court on Monday, October 28, 1991. To afford the Court time to consider their oral arguments, the parties agreed to the extension of the temporary restraining order, now set to expire on November 12, 1991.

## II. POSITIONS OF THE PARTIES

Central to the Court's analysis in this case is 42 U.S.C. § 1396r(h)(3) and (6), which set forth the authority of the Secretary to take certain actions in situations where a nursing facility participating in the Medicaid program fails to meet federal or state requirements relating to the provision of services, residents' rights, and/or administration. Accordingly, before outlining the position of the parties, it may be helpful to set forth at the outset the pertinent statutory provisions.

Section 1396r(h)(3) provides in pertinent part:

(B) Other nursing facilities

With respect to any other nursing facility in a State [*i.e.,* other than a state nursing facility], if the Secretary finds that a nursing facility no longer meets a requirement of subsection (b), (c), (d), or (e) of this section, *and* further *finds* that the facility's deficiencies—

(i) *immediately jeopardize the health or safety of its residents,* the Secretary shall take immediate action to remove the jeopardy and correct the deficiencies through the remedy specified in subparagraph (C)(iii), *or terminate the facility's participation under the State plan* and may provide, in addition, for one or more of the other remedies described in subparagraph (C); or

(ii) *do not immediately jeopardize the health or safety of its residents,* the Secretary may impose any of the remedies described in subparagraph (C).

Nothing in this subparagraph shall be construed as restricting the remedies available to the Secretary to remedy a nursing facility's deficiencies. If the Secretary finds that a nursing facility meets such requirements but, as of a previous period, did not meet such requirements, the Secretary may provide for a civil money penalty under subparagraph (C)(ii) for the days on which he finds that the facility was not in compliance with such requirements.

(C) Specified remedies

The Secretary may take the following actions with respect to a finding that a facility has not met an applicable requirement:

(i) Denial of payment

The Secretary may deny any further payments to the State for medical assistance furnished by the facility to all individuals in the facility or to individuals admitted to the facility after the effective date of the finding.

(ii) Authority with respect to civil money penalties

The Secretary may impose a civil money penalty in an amount not to exceed $10,000 for each day of noncompliance. The provisions of section 1320a–7a of this title (other than subsections (a) and (b)) shall apply to a civil money penalty under the previous sentence in the same manner as such provisions apply to a penalty or proceeding under section 1320–7a(a) of this title.

(iii) Appointment of temporary management

In consultation with the State, the Secretary may appoint temporary management to oversee the operation of the facility and to assure the health and safety of the facility's residents, where there is a need for temporary management while—

(I) there is an orderly closure of the facility, or

(II) improvements are made in order to bring the facility into compliance with all the requirements of subsections (b), (c), and (d) of this section.

The temporary management under this clause shall not be terminated under subclause (II) until the Secretary has determined that the facility has the management capability to ensure continued compliance with all the requirements of subsections (b), (c), and (d) of this section.

The Secretary shall specify criteria, as to when and how each of such remedies is to be applied, the amounts of any fines, and the severity of each of these remedies, to be used in the imposition of such remedies. Such criteria shall be designed so as to minimize the time between the identification of violations and final imposition of the remedies and shall provide for the imposition of incrementally more severe fines for repeated or uncorrected deficiencies. In addition, the Secretary may provide for other specified remedies, such as directed plans of correction.

(D) Continuation of payments pending remediation

The Secretary may continue payments, over a period of not longer than 6 months after the effective date of the findings, under this subchapter with respect to a nursing facility not in compliance with a requirement of subsection (b), (c), or (d) of this section, if—

(i) the State survey agency finds that it is more appropriate to take alternative action to assure compliance of the facility with the requirements than to terminate the certification of the facility,

(ii) the State has submitted a plan and timetable for corrective action to the Secretary for approval and the Secretary approves the plan of corrective action, and

(iii) the State agrees to repay to the Federal Government payments received under this subparagraph if the corrective action is not taken in accordance with the approved plan and timetable.

The Secretary shall establish guidelines for approval of corrective actions requested by States under this subparagraph. (Emphasis added.)

Section 1396r(h)(6) provides in pertinent part:

(B) Secretarial finding of noncompliance and no State finding of noncompliance

If the Secretary finds that a nursing facility has not met all the requirements of subsections (b), (c), and (d) of this section, and that the failure does *not* immediately jeopardize the health or safety of its residents, but the State has not made such a finding, the Secretary—

(i) *may impose any remedies specified in paragraph (3)(C) with respect to the facility, and*

(ii) *shall (pending any termination by the Secretary) permit continuation of payments in accordance with paragraph (3)(D).*

(Emphasis added.)

A. PLAINTIFF'S POSITION

Plaintiff's position, as succinctly set forth in its supplemental memorandum filed October 18, 1991, is that "it is entitled to a hearing before the Secretary on the issue of whether the deficiencies justify termination of the facility, and it is entitled to continue to receive reimbursement under Medicaid until the Secretary, following an administrative law judge hearing, determines that termination is appropriate." Plaintiff's argument in support of this position is essentially three-fold. First, plaintiff argues that under the provisions of 42 U.S.C. § 1396r(h)(3), as it is currently in effect, the Secretary has no authority to immediately terminate a nursing facility from the Medicaid program, that is, terminate the facility without a pretermination hearing, absent a finding by the Secretary that the facility's deficiencies "immediately jeopardize the health or safety of its residents." Plaintiff contrasts that language of section 1396r(h)(3)(B)(i), which allows for immediate termination of a facility's participation where a finding of immediate jeopardy is made, with the language of section 1396r(h)(3)(B)(ii), which allows the Secretary to impose the remedies described in section 1396r(h)(3)(C) (which does not ex-

pressly include termination) where there is no finding of immediate jeopardy.

Second, plaintiff relies upon the language of former 42 U.S.C. § 1396i(c), although plaintiff recognizes that the provision on which it relies is no longer in effect. Section 1396i(c) formerly provided in pertinent part:

(1) The Secretary may cancel approval of any skilled nursing or intermediate care facility at any time if he finds on the basis of a determination made by him as provided in section 1396a(a)(33)(B) of this title that a facility fails to meet the requirements contained in section 1396a(a)(28) of this title or section 1396d(c) of this title, or if he finds grounds for termination of his agreement with the facility pursuant to section 1395cc(b) of this title. In that event the Secretary shall notify the State agency and the skilled nursing facility or intermediate care facility that approval of eligibility of the facility to participate in the programs established by this subchapter and subchapter XVIII of this chapter shall be terminated at a time specified by the Secretary. The approval of eligibility of any such facility to participate in such programs may not be reinstated unless the Secretary finds that the reason for termination has been removed and there is reasonable assurance that it will not recur.

(2) Any skilled nursing facility or intermediate care facility which is dissatisfied with a determination by the Secretary that it no longer qualifies as a skilled nursing facility or intermediate care facility for purposes of this subchapter, shall be entitled to a hearing by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. Any agreement between such facility and the State agency shall remain in effect until the period for filing a request for a hearing has expired or, if a request has been filed, until a decision has been made by the Secretary; except that the agreement shall not be extended if the Secretary makes a written determination, specifying the reasons therefor, that the continuation of provider status constitutes an immediate and serious threat to the health and safety of patients, and the Secretary certifies that the facility has been notified of its deficiencies and has failed to correct them.

According to plaintiff, this statute at one time established the pretermination appeal rights for skilled nursing facilities ("SNFs") and intermediate care facilities ("ICFs") such as Mt. Vernon. However, amendments to the Social Security Act in 1987, 1988, and 1989 have eliminated those appeal rights from section 1396i[2] without replacing them in section 1396r or in any other provision of the Medicaid Act. Plaintiff refers to this as "repeal by implication" which, as plaintiff notes, is not favored in the law.

Finally, in a related argument, plaintiff relies upon the regulations promulgated by the Secretary in implementing former section 1396i(c). Specifically, plaintiff relies upon 42 C.F.R. § 498.5, which provides in pertinent part:

(j) Appeal rights for Medicaid SNFs [skilled nursing facilities] and ICFs [intermediate care facilities] terminated by HCFA.

(1) Any Medicaid SNF or ICF that has had its approval cancelled by HCFA in accordance with § 498.3(b)(8) [termination under § 1396i(c)] has a right to a hearing before an ALJ, to request Appeals Council review of the hearing decision, and to seek judicial review of the Council's decision.

(2) The Medicaid agreement remains in effect until the period for requesting a hearing has expired or, if the facility requests a hearing, until a hearing decision is issued, unless HCFA—

---

**2.** Section 1396i now sets forth the appeal rights of only intermediate care facilities for the mentally retarded.

(i) Makes a written determination that continuation of provider status for the SNF or ICF constitutes an immediate and serious threat to the health and safety of patients and specifies the reasons for that determination; and

(ii) Certifies that the facility has been notified of its deficiencies and has failed to correct them.

Based on these arguments, plaintiff contends that it is entitled to a hearing prior to the termination of its provider agreement, and that it has a right to the continued receipt of Medicaid benefits pending the results of that hearing. Plaintiff contends that the Secretary's failure to provide plaintiff with a hearing prior to the cancellation of plaintiff's provider agreements violates the Medicaid statutes, the Secretary's own regulations, and plaintiff's constitutional right to due process of law.

**3.** Section 1320c–5 provides in pertinent part:
 (b) Sanctions and penalties
 (1) If after reasonable notice and opportunity for discussion with the practitioner or person concerned, and, if appropriate, after the practitioner or person has been given a reasonable opportunity to enter into and complete a corrective action plan (which may include remedial education) agreed to by the organization, and has failed successfully to complete such plan, any organization having a contract with the Secretary under this part determines that such practitioner or person has—
 (A) failed in a substantial number of cases substantially to comply with any obligation imposed on him under subsection (a) of this section, or
 (B) grossly and flagrantly violated any such obligation in one or more instances,
 such organization shall submit a report and recommendations to the Secretary. If the Secretary agrees with such determination, and determines that such practitioner or person, in providing health care services over which such organization has review responsibility and for which payment (in whole or in part) may be made under this chapter, has demonstrated an unwillingness or a lack of ability substantially to comply with such obligations, the Secretary (in addition to any other sanction provided under law) may exclude (permanently or for such period as the Secretary may prescribe) such practitioner or person from eligibility to provide services under this chapter on a reimbursable basis. In determining whether a practitioner or person has demonstrat-

Plaintiff also argues that failure to provide a pretermination hearing to plaintiff would deny plaintiff the equal protection of the law. This argument centers upon an alleged disparity in treatment received by rural nursing facilities under 42 U.S.C. § 1320c–5 and 42 U.S.C. § 1396r(h). In summary, under section 1320c–5 the Secretary may exclude a health care provider from the Medicare program based upon the determination of a utilization and quality control peer review organization ("PRO") that the provider is not in compliance with its obligations under the Medicare statutes.[3] Section 1396r(h), as previously discussed, authorizes the Secretary to terminate or to deny further payment to a health care provider not in compliance with its obligations under Medicaid. However, section 1320c–5(b)(5) allows certain rural health care providers to continue to receive Medicare benefits pending completion of an administrative review process,[4] while sec-

ed an unwillingness or lack of ability substantially to comply with such obligations, the Secretary shall consider the practitioner's or person's willingness or lack of ability, during the period before the organization submits its report and recommendations, to enter into and successfully complete a corrective action plan. If the Secretary fails to act upon the recommendations submitted to him by such organization within 120 days after such submission, such practitioner or person shall be excluded from eligibility to provide services on a reimbursable basis until such time as the Secretary determines otherwise.

**4.** Section 1320c–5(b)(5) provides:
 Before the Secretary may effect an exclusion under paragraph (2) in the case of a provider or practitioner located in a rural health professional shortage area or in a county with a population of less than 70,000, the provider or practitioner adversely affected by the determination is entitled to a hearing before an administrative law judge (described in section 405(b) of this title) respecting whether the provider or practitioner should be able to continue furnishing services to individuals entitled to benefits under this chapter, pending completion of the administrative review procedure under paragraph (4). If the judge does not determine, by a preponderance of the evidence, that the provider or practitioner will pose a serious risk to such individuals if permitted to continue furnishing such services, the Secretary shall not effect the exclusion under paragraph (2) until the provider or

tion 1396r(h) authorizes continuation of payments only in a certain limited circumstance. Plaintiff claims that this distinction, based solely on whether the review of the facility is conducted by a PRO or by the Secretary, denies plaintiff the equal protection of law.

## B. DEFENDANTS' POSITION

Defendants assert several arguments in opposition to plaintiff's motion for a preliminary injunction and in support of defendants' motion to dismiss.

First, defendants submit that plaintiff has not exhausted the administrative remedies available to it, and therefore the Court lacks jurisdiction over this matter pursuant to 28 U.S.C. § 1331.[5] Defendants state that plaintiff has been advised of its right to request an administrative hearing, and defendants argue that plaintiff must exhaust that right before challenging the termination in federal court. Although defendants discuss exhaustion of administrative remedies in the context of 42 U.S.C. § 405(g),[6] defendants do not rely exclusively on that provision, as they argue that "even in the absence of § 405(g) the doctrine of exhaustion of administrative remedies applies to provider terminations under the Medicaid program and ... generally § 1331 jurisdiction is not available absent exhaustion." (Defendants' motion to dismiss, p. 19.) *See Health Equity Resources Urbana, Inc. v. Sullivan,* 927 F.2d 963, 967 (7th Cir.1991).

On the merits of plaintiff's arguments, defendants' position is that the Secretary is not required to provide plaintiff with an administrative hearing, or to continue payment of benefits pending the outcome of such a hearing, before terminating plaintiff's provider agreement. Defendants state that the Secretary in this case is proceeding under 42 U.S.C. § 1396r(h)(6)(B), which, in accordance with section 1396r(h)(3), authorizes the Secretary to take certain actions with respect to a nursing facility where the Secretary finds that the facility is not in compliance with its obligations under Medicaid but where the state has not made such a finding. Defendants argue that in this circumstance the Secretary is authorized to terminate the facility from the Medicaid program even in the absence of a finding that the facility's deficiencies immediately jeopardize the health or safety of its residents. Defendants further argue that neither 42 C.F.R. § 498.5(j) nor former 42 U.S.C. § 1396i(c) requires a hearing prior to the termination of a facility pursuant to 42 U.S.C. § 1396r(h)(3), and that to the extent the statutes and regulations on which plaintiff relies provide for the continuation of benefits pending some administrative review of the Secretary's termination decision, they are inconsistent with the current statutory provisions on that subject, specifically 42 U.S.C. § 1396(h)(3)(D).

Finally, on plaintiff's equal protection argument, defendants argue that the provision of a limited pre-exclusion hearing for rural providers under 42 U.S.C. § 1320c–5 (section 1156 of the Social Security Act) but not in 42 U.S.C. § 1396r(h) (section 1919 of the Act) is a rational decision by Congress given the differences in requirements for and procedures to effectuate the exclusion or termination under those statutes.

## III. DISCUSSION

The principal motion before the Court is plaintiff's motion for a preliminary injunction. However, before turning to the merits of that motion, the Court first must resolve the question raised as to this

---

practitioner has been provided reasonable notice and opportunity for an administrative hearing thereon under paragraph (4).

**5.** Defendants also argue that none of the other statutes on which plaintiff relies, specifically 28 U.S.C. §§ 1343, 1346 and 1651, provides a jurisdictional basis for plaintiff's action.

**6.** Section 405(g) provides in pertinent part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

Court's subject matter jurisdiction over this controversy.

## A. SUBJECT MATTER JURISDICTION

■ Plaintiff claims this Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, 1346, and 1651, as well as the United States Constitution and principles of pendent jurisdiction. Defendants contend that the Court has no statutory basis for jurisdiction in this case. Primarily, defendants maintain that plaintiff first must exhaust its available administrative remedies before a court may assume jurisdiction over a challenge to a termination decision. (Defendants' motion to dismiss, p. 19.)

Unlike the case law cited by defendants, plaintiff's cause of action concerns the very question of administrative remedies. If plaintiff were requesting this Court to set aside the HHS substantive decision to terminate Mt. Vernon's provider agreement, then the exhaustion of administrative remedies would indeed be a prerequisite to this Court assuming jurisdiction. *Health Equity Resources Urbana, Inc. v. Sullivan,* 927 F.2d 963 (7th Cir.1991); *Wayside Farm, Inc. v. U.S. Department of HHS,* 863 F.2d 447, 449 (6th Cir.1988) (provider sought continuation of Medicaid funding during appeal of administrative law judge's decision). The case before this Court, however, is entirely collateral to the merits of the HHS decision to cancel Mt. Vernon's provider agreement.

> The question before us is strictly a legal one, which is not impacted in any way by the Secretary's factual conclusions on the question of certification. Furthermore, the question before us goes to the scope of the Secretary's power, not to the merits of the administrative law judge's findings.

*Wayside Farm,* 863 F.2d at 450. Plaintiff's claim here is that the Secretary's failure to provide plaintiff with a pretermination hearing violates the applicable Medicaid statutes and regulations and denies plaintiff due process of law and the equal protection of the law. The Court is satisfied that plaintiff has raised colorable constitutional and statutory claims collateral to the underlying issues of deficiencies in plaintiff's provision of services to Medicaid-eligible patients and plaintiff's entitlement to continue participation in the Medicaid program notwithstanding those deficiencies, and therefore the Court does not find defendants' exhaustion argument well taken.

Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

## B. REQUEST FOR PRELIMINARY INJUNCTION

The Court normally must consider four criteria in determining whether to grant a preliminary injunction:

1. Whether plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2. Whether plaintiff has shown irreparable injury;

3. Whether issuing a preliminary injunction would cause substantial harm to others; and

4. Whether the public interest would be served by issuing a preliminary injunction.

*N.A.A.C.P. v. City of Mansfield, Ohio,* 866 F.2d 162, 166 (6th Cir.1989), citing *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

### 1. *Substantial Likelihood of Success on the Merits*

Plaintiff presents two grounds for likely recovery on the merits of its claim. The first is an equal protection argument; the second is a due process argument.

#### a. Equal Protection

■ The equal protection assertion by plaintiff centers upon an alleged disparity in treatment received by rural nursing facilities under 42 U.S.C. §§ 1320c–5 and 1396r(h). *See* pp. 1399–1400, *supra.*) Under section 1320c–5, a utilization and quality control peer review organization ("PRO") contracts with the Secretary and HHS to review facilities in a particular state or region. When a PRO determines that a health care provider is not in compli-

ance with its obligations under Title XVIII, the Medicare provisions of the Social Security Act, the Secretary may exclude that provider from funding prior to a hearing on the merits. Section 1320c–5(b)(5) lists an exception for certain rural health providers who are entitled to receive Medicare benefits pending completion of the administrative review process. This hearing is to determine if the provider will pose a serious risk to residents if permitted to continue furnishing health care services.

Under 42 U.S.C. § 1396r(h) in Title XIX, the Medicaid provision of the Social Security Act, the Secretary may terminate a deficient provider's participation in the federal program. (*See* p. 1396, *supra.*) This termination may be achieved immediately if the Secretary or the state finds that the noncomplying facility's deficiencies immediately jeopardize the health or safety of its residents. 42 U.S.C. § 1396r(h)(3)(B)(i). Denial of payment may be achieved if the Secretary alone finds the facility to be deficient but the failure does not immediately jeopardize the health and safety of its residents. 42 U.S.C. § 1396r(h)(3)(B)(ii) and (C)(i). Under section 1396r(h)(6)(B), the Secretary shall permit continuation of payments "pending any termination by the Secretary," but only for a limited amount of time and only under specified conditions set forth in section 1396r(h)(3)(D). No exception is made for rural providers under the Medicaid provisions in section 1396r(h) as is made under the Medicare provisions in section 1320c–5(b)(5).

The discrepancy in treatment of rural health care providers under these two statutory sections is an internal inconsistency, plaintiff contends. Further, plaintiff characterizes this difference in entitlement to a pretermination hearing as one which "turns upon whether the reviewing entity is a PRO or the HHS." (Plaintiff's motion for temporary restraining order and preliminary injunction, p. 1398.) Although plaintiff casts this scenario as "disparate treatment for two identically situated entities," *Id.* at 1398, the Court views this as a potential difference in treatment of the same

entity under different programs by two separate reviewing bodies. In addition, the disparity in treatment actually is not that great. Rural providers under section 1396r(h) are subject to termination by the Secretary after the Secretary determines such action is appropriate because of a provider's noncompliance and a finding of immediate jeopardy. Under section 1320c–5(b), rural providers are subject to the same termination by the Secretary after a hearing merely to determine whether the facility poses a serious risk to its patients' health and safety.

Although there appears to be some difference in the statutes relative to Medicare providers and Medicaid providers with respect to the manner in which they are reviewed for noncompliance, plaintiff concedes that classifications based upon social welfare legislation need only withstand minimal scrutiny under a rational basis test to survive an equal protection challenge. (Plaintiff's motion for temporary restraining order and preliminary injunction, pp. 1398–1399.) The Court concludes that any discrepancy with respect to rural providers receiving payments under separate social legislative programs, meeting the needs of different classes of persons, is not of a magnitude that amounts to any denial of the equal protection of the law.

b. Due Process

 The fundamental due process issue presented in this case is whether the Secretary must provide a nursing facility such as plaintiff with an administrative hearing and with a continuation of benefits pending the outcome of that hearing before terminating the facility's provider agreement, in the absence of a finding by the Secretary that the facility's noncompliance immediately jeopardizes the health and safety of its residents. To resolve this issue, it is necessary to first construe 42 U.S.C. § 1396r(h)(3) and (6) and determine what actions those provisions authorize the Secretary to take, depending upon the specific findings made by the Secretary with respect to the facility involved.[7]

---

**7.** Section 1396r(h) deals with the authority of

both the state and the Secretary with respect to

Section 1396r(h)(3)(B) defines the basic authority of the Secretary to act with respect to a nursing facility other than a state nursing facility (for which provision is made in section 1396r(h)(3)(A)). The statute authorizes the Secretary to take certain action when he finds that the facility "no longer meets a requirement of subsection (b), (c), (d), or (e) of this section," (*i.e.*, that it is not in compliance with its obligations under Medicaid) *and* makes one of two other findings: (1) that the facility's deficiencies "immediately jeopardize the health or safety of its · residents," § 1396r(h)(3)(B)(i); or (2) that the facility's deficiencies "do not immediately jeopardize the health or safety of its residents," § 1396r(h)(3)(B)(ii). In the former situation, the Secretary shall either appoint temporary management of the facility as specified in section 1396r(h)(3)(C)(iii), or terminate the facility's Medicaid agreement, in which case the Secretary also may provide for one or more of the remedies described in subparagraph (C), including denial of payment, civil penalties, or appointment of temporary management. Under section 1396r(h)(3)(B)(ii), however, the Secretary may only impose the remedies described in subparagraph (C). The "remedies described in subparagraph (3)(C)" do *not* expressly include termination of the facility's participation in the Medicaid program. Section 1396r(h)(3)(D) authorizes the Secretary to continue payments for up to six months under certain circumstances.

Section 1396r(h)(6)(B), under which the Secretary is proceeding in this case, defines the authority of the Secretary in situations where the Secretary makes a finding of noncompliance but the state makes no such finding. In that circumstance, upon the Secretary's findings that the facility has not met all the requirements of subsections (b), (c), and (d) of section 1396r *and* that "the failure does not immediately jeopardize the health or safety of its residents,"

the Secretary may impose any of the remedies specified in subsection (h)(3)(C) and shall, pending any termination by the Secretary, permit continuation of payments in accordance with subsection (h)(3)(D).

The statutory language, read literally, would appear to require that the Secretary, *inter alia,* either find immediate jeopardy *or* find no immediate jeopardy. In this case, the Secretary has made neither finding expressly. However, the Secretary's position, with which plaintiff appears to agree, is that the Secretary's failure to find immediate jeopardy is tantamount to a finding of no immediate jeopardy. The Court has accepted this position for purposes of the pending matters, although with some reservation as to whether the statute contemplates a "finding by implication" of no immediate jeopardy.

Where a finding of no immediate jeopardy is made, the statute (specifically section 1396r(h)(3)(B)(ii)) authorizes the remedies described in paragraph (3)(C), which include denial of further payments, imposition of civil monetary penalties, and appointment of temporary management, but which do not expressly include termination. Paragraph (6)(B), under which the Secretary is proceeding in this case, also refers to the remedies in paragraph (3)(C). Accordingly, the statute itself raises the fundamental question whether the Secretary has any authority to terminate a deficient nursing facility absent a finding of immediate jeopardy. Counsel for the Secretary was asked this particular question at oral argument, and counsel identified two specific provisions in subsection (h) which, in the Secretary's view, implicitly authorize the Secretary to terminate a noncomplying nursing facility even in the absence of a finding of immediate jeopardy: First, counsel identified the provision in paragraph (3)(B) which states that "[n]othing in this subparagraph shall be construed as restricting the reme-

noncomplying nursing facilities. References are made in the statutory provision to findings by "the State or the Secretary" and to the authority of either the state or the Secretary to take certain action based on those findings. In the present case, the state has made no findings and has taken no action, and the Secretary, as

previously stated, is appropriately proceeding under section 1396r(h)(6). However, for purposes of the discussion in this case, the Court need not examine the authority of the state to take action, or the authority of either the state or the Secretary to act where the state makes a finding of noncompliance.

dies available to the Secretary to remedy a nursing facility's deficiencies," and second, counsel argued that the reference in paragraph (6)(B)(ii) to the continuation of payments "pending any termination by the Secretary" implicitly authorizes termination in "no immediate jeopardy" situations.

The Court cannot agree with defendants' position. Fundamentally, if the Secretary could terminate a facility with or without a finding of immediate jeopardy, there would be little point in distinguishing, as paragraph (3)(B) clearly does, between situations of immediate jeopardy and situations of no immediate jeopardy. Second, the general language in paragraph (3)(B) on which the Secretary relies refers to options available to the Secretary *"to remedy* a nursing facility's deficiencies." Unlike denial of further payments, imposition of civil penalties, and appointment of temporary management, the remedies expressly set forth in paragraph (3)(C), termination of a facility's provider agreement cannot be seen as a means to "remedy a nursing facility's deficiencies." Finally, paragraph (6)(B)(ii)'s reference to termination, taken in context, would be considered a reference to termination as authorized elsewhere in the statute and not as an authorization in and of itself. If Congress intended to authorize termination in situations to which paragraph (6)(B) is applicable, it would have so stated in subparagraph (6)(B)(i), not in a parenthetical contained in subparagraph (6)(B)(ii), which deals only with the continuation of payments.[8]

There can be no dispute that the Secretary should be accorded broad discretion in the enforcement of the Medicaid Act. Indeed, the parties herein agree that one of the principal objectives of the various statutory amendments implicated in this case was to provide the Secretary with a broader range of remedies to ensure that health care providers who participate in the Medicaid program comply with the Act's

requirements. However, the Secretary's authority is not without limitation, and the Secretary is bound to act within those limitations. The Court has carefully considered the language of 42 U.S.C. § 1396r(h) and the parties' arguments with respect thereto, and the Court must conclude that the Secretary is not authorized to terminate a nursing facility from the Medicaid program absent a finding that the facility's deficiencies immediately jeopardize the health or safety of its residents. The Secretary has other avenues available when there is no immediate jeopardy, such as denial of further payments, imposition of civil money penalties, appointment of temporary management, and other remedies designed "to remedy a nursing facility's deficiencies"; however, in the Court's view, termination from the program is not one of those avenues.

Construction of section 1396r(h) in the context of this case certainly does not answer all the questions which might arise in the future relationship among plaintiff, the state, and the Secretary. The issue presented in this case, whether a pretermination hearing is necessary where there is no finding of immediate jeopardy, is moot if termination itself is not authorized absent a finding of immediate jeopardy. However, should the Secretary make a finding of immediate jeopardy and then terminate plaintiff on that basis pursuant to section 1396r(h)(3)(B)(i), plaintiff might again argue entitlement to a pretermination hearing. Should the Secretary deny any further payments to plaintiff pursuant to section 1396r(h)(3)(B)(ii) and (C)(i), plaintiff might assert a right to an administrative hearing prior to the effective date of that action. These are questions which may arise at some point, perhaps in the very near future, but they need not be determined here. The Court must base its decision in this case, at this point, on what actions the Secretary has taken and the legal rights and obligations of the parties

---

**8.** Since termination by the Secretary would ordinarily result automatically in the discontinuance of payments, the most reasonable construction of the parenthetical in paragraph (6)(B)(ii) would be that although Congress provided for the continuation of payments under (6)(B)(ii), in accordance with paragraph (3)(D), it did not intend such payments to continue beyond the termination of the facility.

in light of those actions. The Court has concluded that the Secretary has not yet made the findings necessary under the statute to terminate plaintiff from participation in the Medicaid program. The Court has not found plaintiff's argument of entitlement to a pretermination hearing to be well taken. However, the finding that the termination itself is beyond the Secretary's authority, at this point, essentially constitutes success on the merits for plaintiff to the extent that the purported cancellation of plaintiff's provider agreement cannot go into effect absent the requisite findings under paragraph (3)(B)(i), and payments to plaintiff shall continue absent further action by the Secretary in accordance with paragraphs (3)(B), (3)(C), and (6)(B), as the Court has construed those provisions.

### 2. *Irreparable Injury*

■ The Sixth Circuit, in *Green v. Cashman,* 605 F.2d 945, 946 (6th Cir.1979), found that Medicaid was not intended to provide financial assistance to health care providers for their own benefit. The Tenth Circuit reiterated that conclusion and ruled against a nursing home claiming irreparable injury if its Medicaid funding was terminated. "Eventide's operating license has not been rescinded and it may still operate as a nursing home and render care to private-pay patients. The unfortunate reality that it will probably encounter difficulty operating at capacity is not of constitutional significance." *Geriatrics, Inc. v. Harris,* 640 F.2d 262, 265 (10th Cir.1981). *See also Wayside Farm, Inc. v. U.S. Dept. of HHS,* 863 F.2d 447, 453 (6th Cir.1988) (termination's potential impact on facility is minimal, given that it can immediately reapply for participation); and *Town Court Nursing Center, Inc. v. Beal,* 586 F.2d 266, 277 (3d Cir.1978) (nursing home could rely on serving private patients or providing other types of care).

In the present case, the Court has found that the Secretary, at least at this point, does not have the authority to terminate plaintiff's provider agreement and in the Court's view irreparable harm would result to plaintiff if in fact its provider status is terminated without compliance with the statutes in question. While the reality of its demise may not be of "constitutional significance" and while it, indeed, may reapply for participation if terminated, the termination of its provider status contrary to law will result, in the Court's view, in irreparable injury to the plaintiff.

### 3. *Substantial Harm to Others and the Public Interest*

■ As stated in *Town Court Nursing Center, supra,* the public interest exists in preserving scarce financial and administrative resources. The harm to residents who live under deficient conditions surely outweighs the disturbance and inconvenience of relocation. *Gruter Foundation, Inc. v. Bowen,* 652 F.Supp. 245, 254 (N.D. Ohio) (citing *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 787, 100 S.Ct. 2467, 2476, 65 L.Ed.2d 506 (1980)). "[A]lthough any trauma incumbent in transferring [nursing home] residents is of great concern to this Court, their health and safety is of far greater concern." *Gruter,* 652 F.Supp. at 254. As no finding of immediate jeopardy was made in the instant case, however, the interests of the public and Mt. Vernon residents would seem to be in continuing plaintiff's provider agreement and the payment of benefits, without disrupting the residents, pending further action by the Secretary.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED.

Plaintiff's motion for a preliminary injunction is GRANTED to the extent that defendants are hereby enjoined from cancelling plaintiff's provider agreement absent a finding that plaintiff's noncompliance immediately jeopardizes the health or safety of its residents, and defendants further are enjoined from terminating the payment of benefits to plaintiff for services provided to Medicaid-eligible patients based solely upon a cancellation of plaintiff's provider agreement without a finding of immediate jeopardy. Nothing in this order shall be construed to prevent the Secretary from

imposing the remedies available to him under 42 U.S.C. § 1396r(h)(3)(B)(ii) and (C) upon a finding of "no immediate jeopardy," or from imposing any of the remedies available to him under 42 U.S.C. § 1396r(h) upon a finding of immediate jeopardy.

IT IS SO ORDERED.