LAKE COUNTY REHABILITATION CENTER, INC., Plaintiff,

v.

Donna SHALALA, Secretary, United States Department of Health & Human Services, et al., Defendants.

Civ. No. 2:94–CV–120–RL.

United States District Court, N.D. Indiana, Hammond Division.

June 10, 1994.

William Davis, Trueblood and Davis, Gary, IN, J. Michael Grubbs, Anthony W. Mommer, Krieg Devault Alexander & Capehart, Indianapolis, IN, for plaintiff.

Asst. U.S. Atty. Orest Szewciw, Dyer, IN, Rebecca Brown and Terry G. Duga, Indiana Atty. General's Office, Indianapolis, IN, Alan S. Dorn, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, Chicago, IL, for defendants.

## *ORDER*

LOZANO, District Judge.

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction and Defendants' Motions to Dismiss. After due consideration of the Motions, this Court hereby **DENIES** Plaintiff's Motion for Preliminary Injunction and **GRANTS** Defendants' Motions to Dismiss.[1]

*BACKGROUND*

Plaintiff, Lake County Rehabilitation Center, Inc. ("LCRC") is a not-for-profit corporation in East Chicago, Indiana, operating as a comprehensive care nursing facility. LCRC is a 122 bed facility which was certified to participate in the Medicare program as a "skilled nursing facility" and in Indiana's Medicaid program as a "nursing facility." Currently, it houses 113 Medicaid residents and one Medicare resident. Defendant, Donna Shalala, is the Secretary ("Secretary") of the United States Department of Health and

---

1. Pursuant to Federal Rule of Civil Procedure 12(b):

   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

   The parties in this matter essentially have treated Defendants' Motions to Dismiss as Motions for Summary Judgment. Both the Defendants and Plaintiff have presented matters outside the pleadings. As the parties have been given ample opportunity to respond to the various arguments with material outside the pleadings, this Court will treat the Motions as ones for summary judgment.

Human Services ("HHS"), the federal agency which is responsible for the administration of the Medicare program under Title XVIII of the Social Security Act and the Medicaid program under Title XIX of the Social Security Act. Defendant, William Pfeifer, is Branch Chief, Survey and Certification Operations Branch of the Division of Health Standards and Quality of Health Care Financing Administration, Region V ("HCFA"), the federal agency which supervises the implementation of the Medicare and Medicaid programs in Indiana. Defendant, James Hmurovich, is the Director of the Indiana Family and Social Services Administration ("IFSSA"), the state agency responsible for administration of the Medicaid program in Indiana. Defendant, John Bailey, is the Health Commissioner of the Indiana State Department of Health ("ISDH"), the state agency designated to assist HCFA and IFSSA by surveying nursing facilities to determine whether the facilities meet the requirements for Medicare and Medicaid programs.

From January 10 to January 26, 1994, ISDH conducted its annual survey of LCRC. On March 16, 1994, ISDH informed LCRC of the following deficiencies: Resident Assessment (42 C.F.R. § 483.20) and Quality of Care (42 C.F.R. § 483.25). ISDH indicated that LCRC's Medicaid participation would be terminated April 26, 1994, unless LCRC requested further proceedings on the matter and demonstrated correction of the deficiencies. Further, ISDH specified that it would be recommending to HCFA that LCRC's approval as a Medicare provider under Title XVIII be terminated.

On March 31, 1994, LCRC submitted a request for reconsideration of ISDH's findings of noncompliance. On April 5, 1994, HCFA notified LCRC of its determination, based on the findings of ISDH's surveys, that the deficiencies at LCRC "limit the capacity of [the] facility to render adequate care and insure the health and safety of [the] residents." Thus, HCFA informed LCRC that it was terminating LCRC's Medicare provider agreement effective April 26, 1994. HCFA further notified LCRC that it had advised IFSSA that LCRC no longer was eligible to participate in the Medicaid pro-

gram as the requirements for the two programs are uniform. *See* letter from William Pfeifer to Joanne Johnson of April 5, 1994, Plaintiff's Complaint, Ex. D. HCFA indicated that another survey could be authorized if LCRC made a credible allegation of compliance; it also informed LCRC that it could request an administrative hearing.

On April 13, 1994, LCRC requested that HCFA authorize another survey prior to April 26, 1994. It also requested an administrative hearing regarding the termination of its Medicare provider agreement. A survey of LCRC was conducted from April 18–26, 1994. ISDH still found LCRC noncompliant and presented LCRC with a statement of deficiencies requiring correction.

On April 26, 1994, LCRC requested an administrative review of HCFA's official determination regarding termination of LCRC's Medicare and Medicaid certification. On April 29, 1994, ISDH notified LCRC that its Medicaid certification was terminated effective April 26, 1994. Also, on April 29, 1994, IFSSA notified LCRC that its Medicaid provider agreement was terminated effective April 26, 1994.

On May 2, 1994, LCRC sought a temporary restraining order from this Court in order to prevent the immediate termination of Medicare and Medicaid payments. In the Complaint, Plaintiff asserts that termination of its participation in the Medicaid and Medicare programs without a determination of immediate jeopardy to its residents exceeds the authority set forth in the Social Security Act and violates due process of law. Moreover, Plaintiff asserts in the Complaint that it will be forced to close the facility if its Medicaid and Medicare payments are terminated. This Court granted the temporary restraining order with the condition that LCRC not accept any new patients pending these proceedings. The parties voluntarily agreed to extend the temporary restraining order until June 10, 1994. On June 2, 1994, a hearing was held to determine whether a preliminary injunction should be ordered in this matter.

*STATUTORY AND REGULATORY BACK-GROUND*

The dispute in this matter arises regarding the Secretary's authority to terminate a

nursing facility's participation in the Medicare and Medicaid programs when there has been a finding of noncompliance with minimum requirements for participation but no finding that the deficiencies immediately jeopardize the health or safety of the facility's residents. As various statutory provisions are relevant to this dispute, it may be helpful to set forth the pertinent statutory provisions and to explain the general framework of the Medicare and Medicaid programs in order to provide a proper backdrop for understanding the parties' arguments.

Medicare is a federally administered program that provides for in-patient hospital care and related post-hospital nursing home health services to aged or disabled individuals who are eligible for Social Security benefits under Title II of the Social Security Act. 42 U.S.C.A. § 426, § 1395c (West 1992). Although HHS administers the Medicare program, it has delegated the function of determining compliance with minimum health and safety standards to HCFA. *See* Medicare/Medicaid State Operations Manual, U.S. Department of Health and Human Services, HCFA–Pub. 7, § 1000 (1989) ("Medicare/Medicaid Manual"). HCFA then contracts with state health agencies, such as ISDH in Indiana, to help determine whether skilled nursing facilities meet minimum standards under Medicare by conducting on-site surveys of the premises. 42 U.S.C.A. § 1395aa (West 1992); 42 C.F.R. § 488.10 (1992); Medicare/Medicaid Manual at § 1002. The state agency then forwards its survey findings and recommendation to HCFA. 42 U.S.C.A. § 1395aa (West 1992); 42 C.F.R. § 488.12 (1992).

Medicaid is a state administered program providing payment for a range of medical care services to individuals whose income and resources are below certain limits. 42 U.S.C.A. § 1396d(a) (West Supp.1994). The federal government reimburses each participating state for a portion of its Medicaid expenditures. 42 U.S.C.A. § 1396b (West Supp.1994). In Indiana, IFSSA administers the state's Medicaid program and, similar to HHS with Medicare, has ISDH help determine whether a nursing facility complies with

Medicaid requirements by conducting on-site surveys.

In order to qualify to receive payments under Medicare and/or Medicaid, a nursing facility periodically must be certified as meeting certain minimum requirements. 42 U.S.C.A. § 1395i–3(a)(3), (b)–(d) (West Supp. 1994); 42 U.S.C.A. § 1396r(a)(3), (b)–(d) (West Supp.1994); 42 C.F.R. § 483.1 *et seq.* (1992). A facility that is certified then enters into a provider agreement with the federal government and/or the state. 42 U.S.C.A. § 1395cc(a) (West 1992); 42 U.S.C.A. § 1396a(a)(27) (West Supp.1994). If it is determined, through later surveys, that a previously certified facility no longer meets participation requirements, various sanctions may be imposed. 42 U.S.C.A. § 1395i–3(g), (h) (West Supp.1994); 42 U.S.C.A. § 1395cc(b)(2) (West 1992); 42 U.S.C.A. § 1396a(a)(33)(B) (West Supp.1994); 42 U.S.C.A. § 1396r(h) (West Supp.1994).

Prior to 1987, when HCFA or the state determined that a facility was out of compliance with Medicare or Medicaid participation requirements but the noncompliance did not pose an immediate and serious threat to the health or safety of residents, the only remedies available were either termination of the facility's provider agreement or denial of payment for new admissions. 57 Fed.Reg. 39,278, 39,279 (1992). However, the Omnibus Budget Reconciliation Act of 1987, which amended the Social Security Act with respect to the Medicare and Medicaid enforcement process, expanded the choice of remedies available to HCFA and the state. Currently, the enforcement provision of Medicare, pertinent to this case, reads as follows:

**(2) Secretarial authority**

**(A) In general**

With respect to any skilled nursing facility in a State, if the Secretary finds, or pursuant to a recommendation of the State under paragraph (1) finds, that a skilled nursing facility no longer meets a requirement of subsection (b), (c), (d), or (e) of this section, and further finds that the facility's deficiencies—

(i) immediately jeopardize the health or safety of its residents, the Secretary shall take immediate action to remove

the jeopardy and correct the deficiencies through the remedy specified in subparagraph (B)(iii), or terminate the facility's participation under this subchapter and may provide, in addition, for one or more of the other remedies described in subparagraph (B);

(ii) do not immediately jeopardize the health or safety of its residents, the Secretary may impose any of the remedies described in subparagraph (B).

Nothing in this subparagraph shall be construed as restricting the remedies available to the Secretary to remedy a skilled nursing facility's deficiencies. If the Secretary finds, or pursuant to the recommendation of the State under paragraph (1) finds, that a skilled nursing facility meets such requirements but, as of a previous period, did not meet such requirements, the Secretary may provide for a civil money penalty under subparagraph (B)(ii) for the days on which he finds that the facility was not in compliance with such requirements.

**(B) Specified remedies**

The Secretary may take the following actions with respect to a finding that a facility has not met an applicable requirement:

**(i) Denial of payment**

The Secretary may deny any further payments under this subchapter with respect to all individuals entitled to benefits under this subchapter in the facility or with respect to such individuals admitted to the facility after the effective date of the finding.

**(ii) Authority with respect to civil money penalties**

The Secretary may impose a civil money penalty in an amount not to exceed $10,000 for each day of noncompliance. The provisions of section 1320a–7a of this title (other than subsections (a) and (b)) shall apply to a civil money penalty under the previous sentence in the same manner as such provisions apply to a penalty or proceeding under section 1320a–7a(a) of this title.

**(iii) Appointment of temporary management**

In consultation with the State, the Secretary may appoint temporary management to oversee the operation of the facility and to assure the health and safety of the facility's residents, where there is a need for temporary management while—

(I) there is an orderly closure of the facility, or

(II) improvements are made in order to bring the facility into compliance with all the requirements of subsections (b), (c), and (d) of this section.

The temporary management under this clause shall not be terminated under subclause (II) until the Secretary has determined that the facility has the management capability to ensure continued compliance with all the requirements of subsections (b), (c), and (d).

The Secretary shall specify criteria, as to when and how each of such remedies is to be applied, the amounts of any fines, and the severity of each of these remedies, to be used in the imposition of such remedies. Such criteria shall be designed so as to minimize the time between the identification of violations and final imposition of the remedies and shall provide for the imposition of incrementally more severe fines for repeated or uncorrected deficiencies. In addition, the Secretary may provide for other specified remedies, such as directed plans of correction.

42 U.S.C.A. § 1395i–3(h)(2) (West Supp. 1994).

Similarly, the relevant enforcement provisions for Medicaid specify that:

**(1) In general**

If a State finds, on the basis of a standard, extended, or partial extended survey under subsection (g)(2) of this section or otherwise, that a nursing facility no longer meets a requirement of subsection (b), (c), or (d) of this section, and further finds that the facility's deficiencies—

(A) immediately jeopardize the health or safety of its residents, the State shall take immediate action to remove the jeopardy and correct the deficiencies

through the remedy specified in paragraph (2)(A)(iii), or terminate the facility's participation under the State plan and may provide, in addition, for one or more of the other remedies described in paragraph (2); or

(B) do not immediately jeopardize the health or safety of its residents, the State may—

(i) terminate the facility's participation under the State plan,

(ii) provide for one or more of the remedies described in paragraph (2), or

(iii) do both.

Nothing in this paragraph shall be construed as restricting the remedies available to a State to remedy a nursing facility's deficiencies. If a State finds that a nursing facility meets the requirements of subsections (b), (c), and (d) of this section, but, as of a previous period, did not meet such requirements, the State may provide for a civil money penalty under paragraph (2)(A)(ii) for the days in which it finds that the facility was not in compliance with such requirements.

\*     \*     \*     \*     \*     \*

**(3) Secretarial Authority**

**(B) Other nursing facilities**

With respect to any other nursing facility in a State, if the Secretary finds that a nursing facility no longer meets a requirement of subsection (b), (c), (d), or (e) of this section, and further finds that the facility's deficiencies—

(i) immediately jeopardize the health or safety of its residents, the Secretary shall take immediate action to remove the jeopardy and correct the deficiencies through the remedy specified in subparagraph (C)(iii), or terminate the facility's participation under the State plan and may provide, in addition, for one or more of the other remedies described in subparagraph (C); or

(ii) do not immediately jeopardize the health or safety of its residents, the Secretary may impose any of the remedies described in subparagraph (C).

Nothing in this subparagraph shall be construed as restricting the remedies available to the Secretary to remedy a nursing facility's deficiencies. If the Secretary finds that a nursing facility meets such requirements but, as of a previous period, did not meet such requirements, the Secretary may provide for a civil money penalty under subparagraph (C)(ii) for the days on which he finds that the facility was not in compliance with such requirements.

**(C) Specified remedies**

The Secretary may take the following actions with respect to a finding that a facility has not met an applicable requirement:

**(i) Denial of payment**

The Secretary may deny any further payments to the State for medical assistance furnished by the facility to all individuals in the facility or to individuals admitted to the facility after the effective date of the finding.

**(ii) Authority with respect to civil money penalties**

The Secretary may impose a civil money penalty in an amount not to exceed $10,000 for each day of noncompliance. The provisions of section 1320a–7a of this title (other than subsections (a) and (b)) shall apply to a civil money penalty under the previous sentence in the same manner as such provisions apply to a penalty or proceedings under section 1320a–7a(a) of this title.

**(iii) Appointment of temporary management**

In consultation with the State, the Secretary may appoint temporary management to oversee the operation of the facility and to assure the health and safety of the facility's residents, where there is a need for temporary management while—

**(I)** there is an orderly closure of the facility, or

**(II)** improvements are made in order to bring the facility into compliance with all the requirements of subsections (b), (c), and (d) of this section.

The temporary management under this clause shall not be terminated under subclause (II) until the Secretary has determined that the facility has the management capability to ensure continued compliance with all the requirements of subsections (b), (c), and (d) of this section.

The Secretary shall specify criteria, as to when and how each of such remedies is to be applied, the amounts of any fines, and the severity of each of these remedies, to be sued in the imposition of such remedies. Such criteria shall be designed so as to minimize the time between the identification of violations and final imposition of the remedies and shall provide for the imposition of incrementally more severe fines for repeated or uncorrected deficiencies. In addition, the Secretary may provide for other specified remedies, such as directed plans of correction.

42 U.S.C.A. § 1396r(h) (West Supp.1994).

*DISCUSSION*

In support of its Motion for a preliminary injunction, Plaintiff argues that the above provisions specifically limit the Secretary's ability to terminate a facility's participation in Medicare or Medicaid. Plaintiff asserts that the Secretary may terminate a facility's participation in Medicare or Medicaid only when there has been a finding of immediate jeopardy to the health or safety of the residents at the facility.

Defendants assert various arguments in support of their Motions to Dismiss and in opposition to Plaintiff's Motion for a preliminary injunction. First, Defendants contend that this Court lacks subject matter jurisdiction as Plaintiff has failed to exhaust administrative remedies. Second, Defendants argue that, even if this Court has subject matter jurisdiction, it should abstain from asserting jurisdiction because there are ongoing state administrative proceedings in this matter. Third, Defendants contend that Plaintiff has no cause of action with respect to its Medicaid claim as it was the state that terminated Plaintiff's provider agreement, and the state expressly has such authority even in the absence of a finding of immediate jeopar-

dy. Fourth, even if it is determined that the Secretary terminated Plaintiff's provider agreement, Defendants argue that the Secretary has such authority to terminate in the absence of a finding of immediate jeopardy because sections 1395i–3(h) and 1396r(h)(3) expressly preserve the availability of other remedies under the Medicare and Medicaid statutes.

A. *SUBJECT MATTER JURISDICTION*

█ Before turning to the merits of Plaintiff's Motion for Preliminary Injunction, this Court first must resolve the issue as to whether the Court has subject matter jurisdiction. Plaintiff asserts that this Court has jurisdiction under 28 U.S.C.A. §§ 1331, 1343, 1346, 1651, 2201, and 2202. Defendants contend that the Court does not have jurisdiction pursuant to 42 U.S.C.A. section 405(g), (h).

Under 42 U.S.C.A. § 405(h), incorporated into the Medicare statute by section 1395ii:

> No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C.A. § 405(h) (West Supp.1994). Because section 405(g) of the Social Security Act only provides for judicial review of final decisions of the Secretary, Defendants contend that this Court lacks subject matter jurisdiction as Plaintiff has failed to exhaust administrative remedies. Plaintiff maintains that it should be excused from exhausting administrative remedies because its claims represent a collateral attack on the Secretary's decision to terminate rather than one on the merits.

Ordinarily, the Secretary decides when a decision is "final," meaning that a party has appropriately exhausted administrative remedies, and courts defer to the Secretary's judgment. *See Weinberger v. Salfi*, 422 U.S. 749, 765–67, 95 S.Ct. 2457, 2466–68, 45 L.Ed.2d 522 (1975). However, the Supreme Court has recognized that "cases may arise

where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Bowen v. City of New York*, 476 U.S. 467, 483, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18). For instance, in *Mathews v. Eldridge*, 424 U.S. at 330–32, 96 S.Ct. at 900–01, the Supreme Court determined that the respondent's failure to exhaust administrative remedies should be waived because his constitutional claim of entitlement to an evidentiary hearing prior to termination of Social Security disability payments was collateral to his substantive claim of entitlement and because he colorably claimed than an erroneous termination would damage him in a way not compensable through retroactive payments.

Essentially, then, to be excused from the exhaustion requirement, Plaintiff must show that: (1) the suit involves a collateral attack rather than one on the merits; and (2) its interest in prompt judicial review is so compelling that deference to the agency's determination is inappropriate. *Johnson v. Sullivan*, 922 F.2d 346, 352–53 (7th Cir.1990); *see also Bowen*, 476 U.S. at 483, 106 S.Ct. at 2031 (citing *Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900). This Court concludes that Plaintiff meets these requirements. Plaintiff's cause of action does not require the Court to address the merits of the Secretary's decision to terminate Plaintiff's provider agreement. Instead, the issue before the Court solely addresses a question of law regarding the scope of the Secretary's power. Moreover, Plaintiff has demonstrated a compelling need for prompt judicial review. Unlike the situation in *Health Equity Resources Urbana, Inc. v. Sullivan*, 927 F.2d 963 (7th Cir.1991), cited by Defendants, Plaintiff could be irreparably harmed by requiring it to exhaust administrative remedies. Whereas the health care provider in *Health Equity* was receiving a loan from the state to operate its facilities pending administrative appeal, Plaintiff's monetary subsidies will cease

relatively soon.[2] As Plaintiff relies almost totally on Medicare and Medicaid payments to finance its facility, it could be forced to close without prompt judicial review. Therefore, this Court finds that Plaintiff should be excused from the exhaustion requirement and determines that it has jurisdiction over the matter.

## B. *ABSTENTION*

■ Given that this Court has subject matter jurisdiction, the Court next must determine whether abstention is appropriate in this case. This Court begins with the fundamental notion that federal courts generally should exercise properly conferred jurisdiction and that abstention is the exception rather than the rule. *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); *In the Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993). Defendants, however, claim that pursuant to the *Younger* doctrine, the Court should abstain as there are ongoing state administrative proceedings in this matter.

After a review of the case law, this Court finds that Defendants' reliance on the *Younger* doctrine is misplaced. In *Younger v. Harris*, 401 U.S. 37, 53–54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971), the Supreme Court held that, absent unusual circumstances, a federal court could not interfere with a pending state criminal proceeding. Underlying the *Younger* decision are the concepts of comity and federalism. These concepts involve:

a proper respect for state functions, a recognition of the fact that the entire country is made of up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

---

2. Although federal regulations provide for a continuation of federal matching payments to a state with respect to Medicaid for up to 120 days pending a state administrative hearing, there is no guarantee that Plaintiff's claim will be heard within this time period nor is there any plan regarding payments if Plaintiff should need to appeal the decision. 42 C.F.R. § 442.40 (1992).

*Id.* at 44, 91 S.Ct. at 750. Although this doctrine subsequently has been extended to civil judicial and administrative proceedings when important state interests are involved, the common element in these cases is an "impact on and interference with the state proceedings." *AFCME v. Tristano,* 898 F.2d 1302, 1304 (7th Cir.1990) (see cases cited therein).

This case simply does not implicate traditional notions of comity and federalism. Plaintiff does not seek to interrupt or challenge the pending state administrative proceedings. Instead, Plaintiff seeks to enjoin the Secretary from terminating its provider agreements under Medicare and Medicaid as such action is beyond the scope of her authority when there has been no finding of immediate jeopardy. The pending state administrative action involves factual issues as to whether the facility was deficient. The issues in these two proceedings are substantially different; moreover, the relief requested in federal court, if granted, would not unduly interfere with the state proceedings. Although Plaintiff's provider agreement could not be terminated, other sanctions could be imposed. Thus, the administrative proceeding still would be necessary.

Therefore, as the current proceeding will not unduly interfere with the ongoing state administrative proceeding, this Court refuses to abstain from asserting jurisdiction.

## C. *PRELIMINARY INJUNCTION*

In order to succeed in its request for a preliminary injunction, Plaintiff first must demonstrate: (1) some likelihood of succeeding on the merits; and (2) it has no adequate remedy at law and will suffer irreparable harm if the injunction is denied. *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir.1992). If Plaintiff is unable to establish either of these prerequisites, then the Court's inquiry is complete, and the injunction must be denied. *Id.* However, if Plaintiff establishes both of these prerequisites, then the Court must consider (3) the irreparable harm Defendants will suffer if the injunction is granted, balancing that harm against the irreparable harm to Plaintiff if relief is denied, and (4) the public interest of granting or denying the injunction as it relates to nonparties. *Id.* at 11–12. As a preliminary injunction is an extraordinary remedy, it should only be granted in a case where a plaintiff has clearly established his burden of persuasion as to all the prerequisites. *Lasco v. Northern,* 733 F.2d 477, 480 (7th Cir.1984).

### 1. *Likelihood of Success on the Merits*

Plaintiff contends that it is entitled to a preliminary injunction because the Secretary is without statutory authority to terminate its participation in the Medicare and Medicaid programs absent a finding of immediate jeopardy. As Plaintiffs alleged "harm" largely arises due to its termination as a Medicaid provider, the Court begins its analysis with the Medicaid statute.

### a. *Medicaid*

■ Pursuant to 42 U.S.C.A. section 1396r(h)(3), if the Secretary finds that a facility's deficiencies immediately jeopardize the health or safety of its residents, the Secretary shall terminate the facility's participation under the state plan or appoint temporary management for the facility. In situations where there is a finding of noncompliance which does not immediately jeopardize the health or safety of the facility's residents, the Secretary may impose any of the remedies described in subparagraph (C) which includes denial of payment for new admissions, civil money penalties, or appointment of temporary management. 42 U.S.C.A. § 1396r(h)(3)(B) (West Supp.1994). Plaintiff claims that a literal reading of the statute requires a finding of immediate jeopardy before the Secretary can terminate a facility's Medicaid participation. As there has been no such finding in this case, Plaintiff asserts that the determinations by HCFA are contrary to its statutory power and void as a matter of law.

Defendants first argue in opposition to Plaintiff's Motion for Preliminary Injunction and in support of their Motions to Dismiss that it was the state that determined that Plaintiff did not comply with Medicaid requirements and terminated Plaintiff's Medicaid participation. As the state undeniably

has authority to terminate a facility's Medicaid participation even in the absence of a finding of immediate jeopardy, *see* 42 U.S.C.A. § 1396r(h)(1)(B), Defendants assert that there is no legal or equitable basis for injunctive relief as to the Medicaid claim.

While Plaintiff agrees that the state has authority to terminate Medicaid certification in nonimmediate jeopardy cases, it contends that the state has such authority only when acting independently. In this case, Plaintiff asserts the state was acting under the direction of HCFA. In support of this position, Plaintiff points out that IFSSA did not provide notification of the termination of Plaintiff's Medicaid provider agreement until April 29, 1994. IFSSA supposedly took this action only after HCFA sent a letter informing IFSSA that: 1) HCFA was terminating Plaintiff's Medicare provider agreement, and 2) pursuant to section 1396r(h)(1)(B), IFSSA must take action regarding Plaintiff's Medicaid certification as well.[3] Under section 1396r(h)(1)(B), IFSSA could terminate Plaintiff's Medicaid participation, impose alternative remedies, or do both. According to Plaintiff, pursuant to various provisions in the Medicare/Medicaid Manual, if a facility is a duly certified provider (certified to participate in both Medicare and Medicaid), the state is required to terminate a facility's Medicaid provider agreement once HCFA decides to terminate the facility's Medicare provider agreement. Thus, Plaintiff contends that IFSSA was not acting independently in making the decision to terminate as HCFA specifically directed it to take action,

knowing that the only action it could take was to terminate.[4]

This Court finds various flaws in Plaintiff's argument. First, the facts in this case do not support Plaintiff's conclusion that the state was not acting independently when it made the decision to terminate Plaintiff's Medicaid provider agreement. Plaintiff completely discounts the undisputed fact that ISDH found deficiencies regarding resident assessment and quality of care and notified Plaintiff on March 16, 1994, that its Medicaid certification would be terminated effective April 26, 1994. Plaintiff attempts to sidestep this fact by asserting that only IFSSA has authority to terminate a facility's participation in the Medicaid program, citing section 1008(B) of the Medicare/Medicaid Manual as authority for this position. Section 1008(B) states that:

> Medicaid law requires that the same State agency which makes the certifications for Medicare provider and supplier eligibility also make the determinations for Medicaid eligibility. The law also requires that there be a separately designated single State agency responsible for the overall management of the Medicaid program. Therefore, there is, in each State, a State Medicaid agency which is ultimately responsible to HCFA for Medicaid program administration. Each State Medicaid agency must enter into an interagency agreement with the certifying State agency establishing the adjudicative function of the certifying State agency in providing for

---

3. Specifically, the relevant portions of the letter state:

> Based on the January 26, 1994 survey conducted by the Indiana State Department of Health, we [HCFA] have determined that the deficiencies identified limit the capacity of the facility to render adequate care and ensure the health and safety of residents. Therefore, we are terminating the Medicare provider agreement of the facility effective April 26, 1994.
>
> \*   \*   \*   \*   \*   \*
>
> Since Lake County Rehabilitation Center also participates as a nursing facility in the Title XIX program, please be advised that Section 1919(h)(1)(B) [section 1396r(h)(1)(B)] of the Social Security Act specify the action the State must take in regard to the nursing facility's Title XIX certification when a determination of limited capacity has been made. . . .

Letter from Walter V. Kummer to James M. Verdier of April 5, 1994, HHS' Motion to Dismiss, Ex. A.

4. Plaintiff also argues that the state was not acting independently in this matter as termination was the only remedy available to the state, once HCFA informed IFSSA that it must take action, because the State of Indiana has failed to establish laws or regulations for adopting alternative remedies as required by the Medicaid statute. *See* section 1396r(h)(2)(A). The Court quickly dismisses this argument. Even if this remedy was the only one available to IFSSA, the fact remains that IFSSA has authority under the statute to terminate Plaintiff's participation in the Medicaid program once the state discovered sanctionable deficiencies.

the application of federal certification standards and procedures. The State Medicaid agency must accept the other State agency's certification decisions as final, but exercises its own determination whether to enter into agreements with the approved providers.

Plaintiff misconstrues this provision. Section 1008(B) specifically indicates that the state Medicaid agency must accept the surveying agency's certification decisions as final—the state Medicaid agency merely exercises discretion in determining whether to enter into agreements with *approved* providers. Plaintiff was not an approved provider. Thus, pursuant to section 1396r(h)(1), IFSSA was obligated to take action. In this case, IFSSA simply chose to terminate Plaintiff's participation in the state Medicaid plan.

Moreover, the timing of IFSSA's letter notifying Plaintiff of the termination of its Medicaid provider agreement does not necessarily establish that IFSSA was acting under HCFA's direction. As Defendants point out, ISDH gave Plaintiff an opportunity to contest its March 16, 1994, determination terminating Plaintiff's Medicaid certification, and another on-site survey was conducted April 18–26, 1994. As ISDH could not certify to IFSSA until April 26, 1994, that Plaintiff remained out of compliance, IFSSA could not terminate Plaintiff's Medicaid provider agreement until that time.

Second, even if this Court were to assume that the letter from HCFA amounted to a specific directive to IFSSA to terminate Plaintiff's Medicaid provider agreement, Plaintiff has failed to show this Court any legal authority in support of its position that the state must act independently when making the decision to terminate. The statute, itself, simply indicates that the state has authority to terminate in situations that do not immediately jeopardize the health or safety of residents. The statute does not speak to the issue of whether a state must act alone, nor is there anything in the legislative history to support this conclusion. This Court finds it difficult to believe that Congress did not expect states to confer with HCFA and the Secretary when making determinations as to how to sanction noncom-

plying nursing facilities given that participation requirements in the Medicare and Medicaid statutes are identical.

Therefore, this Court finds that Defendants are entitled to judgment as a matter of law as to the Plaintiff's Medicaid claim. Not only has Plaintiff failed to show that it has a reasonable likelihood of succeeding on the merits, but it also has failed to demonstrate that there is a material issue of fact regarding this claim. *See Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) ("[A] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial.") The undisputed facts clearly reveal that the state terminated Plaintiff's Medicaid participation. Because the state expressly had such authority, even in the absence of a finding of immediate jeopardy, Plaintiff's cause of action as to its Medicaid claim fails.

b. *Medicare*

■ Plaintiff next argues that it is entitled to a preliminary injunction because the Secretary did not have authority to terminate its Medicare participation. Specifically, as the enforcement provisions of the Medicare statute read the same as the Medicaid statute (minus the provisions about state authority), Plaintiff makes the same argument as to the Secretary's authority to terminate its Medicare participation—the literal language of the statute requires that a finding of immediate jeopardy be made before the Secretary may terminate a facility's Medicare participation.

Defendants argue that the Secretary has authority to terminate regardless of the presence of immediate jeopardy. In support of this position, Defendants rely on two provisions in the Medicare statute. First, Defendants identify the provision in section 1395i–3(h)(2)(B) which states that "[n]othing in this subparagraph shall be construed as restricting the remedies available to the Secretary to remedy a skilled nursing facility's deficiencies." Then, Defendants direct the Court's attention to section 1395cc(b)(2) which authorizes the Secretary to terminate the Medicare agreement of any provider that "fails to

comply substantially with the provisions of the agreement, with the provisions of this subchapter and regulations thereunder," or for other reasons inapplicable to this case. As the skilled nursing facility compliance provisions are "provisions of this subchapter," and section 1395cc(b)(2) does not require a finding of immediate jeopardy prior to termination, Defendants assert that the Secretary is entitled to terminate Plaintiff's participation without a finding of immediate jeopardy.

The issue before this Court, then, is one of statutory interpretation. In *Claridge House, Inc. v. U.S. DHHS*, 795 F.Supp. 1393, 1403–04, the United States District Court for the Southern District of Ohio dealt with a similar issue when it was asked to determine whether the Secretary has implicit authority under section 1396r(h)(3) to terminate a facility's Medicaid participation in the absence of a finding of immediate jeopardy. The *Claridge House* court determined that the "notwithstanding" clause in section 1396r(h)(3) did not preserve an implicit power to terminate in the absence of a finding of immediate jeopardy. *Id.* at 1404. The court reasoned that if the Secretary could terminate a facility with or without a finding of immediate jeopardy, then there would be little point in distinguishing the two situations. *Id.* Moreover, the court found that termination could not be considered a "remedy." *Id.*

This Court declines to follow the reasoning of *Claridge House*. First, this Court disagrees that allowing the Secretary to terminate a facility regardless of a finding of immediate jeopardy would render meaningless the distinction between immediate and nonimmediate jeopardy situations. In enacting the enforcement provisions to the Medicaid and Medicare statutes, Congress expressly wished to expand the remedies available to the Secretary. *See* H.R.Rep. No. 391(I), 100th Congress, 1st Sess, 475, Reprinted in 1987 USCCAN 2313–1, 2313–295. Committee reports pointed to the problem of the "yo-yo" or "roller coaster" phenomenon in which noncomplying facilities would temporarily correct their deficiencies before an onsite survey and then quickly lapse into noncompliance until the next annual review. *Id.*

at 2313–291. Purportedly, the new version of the statute would help eradicate this problem by providing the Secretary with a set of intermediate sanctions to choose from rather than the extreme choices of termination or no sanction. However, there is no indication in the legislative history of the statute that Congress wished to limit the Secretary's ability to terminate a facility from participation in the Medicare program. In fact, the reoccurring theme emerging from the legislative history is that the new provisions would grant the Secretary remedial powers in addition to those already available. *Id.* at 2313–291—2313–296.

Against this backdrop, this Court believes that the statute should be interpreted as a guidepost for the Secretary rather than as a limit on her powers. The immediate jeopardy provision mandates certain actions which the Secretary must take when a facility is found to immediately jeopardize the health or safety of its residents. The Secretary has no discretion; she must terminate the facility's participation in Medicare or appoint temporary management. However, the nonimmediate jeopardy provision grants the Secretary discretion, allowing (but not requiring) her to apply certain listed intermediate remedies rather than the more extreme sanctions to facilities found noncompliant that do not immediately jeopardize the health or safety of their residents.

Second, this Court disagrees with the *Claridge House* court's conclusion that termination is not a "remedy." Termination obviously is a remedy in that it requires a noncomplying facility to correct its deficiencies in order to become eligible to reapply for Medicare participation.

Finally, this Court finds that this case is distinguishable from *Claridge House* as the Secretary explicitly has authority to terminate a facility's Medicare provider agreement pursuant to section 1395cc(b)(2). Plaintiff argues that it is a maxim of statutory construction that specific provisions of a statute control over general provisions. As section 1395i–3(h)(2) specifically applies to skilled nursing care facilities while section 1395cc(b)(2) generally applies to all providers, Plaintiff contends that section 1395cc(b)(2) does not override the specific provisions in section 1395i–3(h)(2)(A)–(B).

However, Plaintiff's interpretation of the statute violates another maxim of statutory construction that "a statute must, if possible, be construed in such a fashion that every word has some operative effect." *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *see also Kungys v. United States,* 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988); *Graham v. Bodine Elec. Co.,* 782 F.Supp. 74, 75 (N.D.Ill.1992). Plaintiff's interpretation of the statute renders the "notwithstanding" clause devoid of any meaning. This Court believes that the better interpretation of the statute is that the "notwithstanding" clause preserves the Secretary's remedies available in section 1395cc(b)(2). As this provision permits the Secretary to terminate a provider's agreement even in the absence of a finding of immediate jeopardy, this Court concludes that the Secretary properly exercised her authority in this case. Therefore, as to its Medicare claim, Plaintiff has failed to state a claim upon which relief can be granted, and Defendants are entitled to judgment as a matter of law.

*CONCLUSION*

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction is **DENIED** and Defendants' Motions to Dismiss are **GRANTED.**