### INTERNATIONAL LONG TERM CARE, INC., d/b/a Peninsula Health Care, Plaintiff,

v.

### Donna E. SHALALA, et al., Defendants.

### Civil Action No. 96–1956 (PLF).

United States District Court,
District of Columbia.

Nov. 27, 1996.

**16**

Gene A. Bechtel, Bechtel & Cole, Washington, DC, for plaintiff.

Fred E. Haynes, Assistant United States Attorney, Washington, DC, William Charles Bailey, Dept. of Health and Human Services, Baltimore, MD, for defendants.

## *OPINION*

PAUL L. FRIEDMAN, District Judge.

Plaintiff, who operates a long term skilled nursing facility in Menlo Park, California, seeks to prevent the Health Care Financing Administration ("HCFA") of the Department of Health and Human Services from terminating its participation in the Medicare program. Plaintiff has moved for a temporary restraining order and a preliminary injunction and defendants have moved to dismiss the complaint.

On July 18, 1996, the California Department of Health Services surveyed the Peninsula Plaza Health Care Center and found that the facility was not in substantial compliance with Medicare regulations. The survey consisted of 159 pages and identified 53 deficiencies. On August 9, HHS informed plaintiff that it would be terminated from the Medicare program on August 24, 1996. Termination from Medicaid is automatic upon termination from Medicare. On or about August 22, plaintiff submitted a "plan of correction," and on August 23, it filed a motion for a TRO to prevent its termination from Medicare. On August 28, HHS modified its determination and advised plaintiff that it would be denied Medicare payments only for new admissions. It also authorized a revisit to Peninsula Plaza based on plaintiff's plan of correction. *See* Def.'s Mot., Ex. D.

A revisit and follow-up survey were conducted on October 9, 1996. The survey team concluded that plaintiff was still not in compliance although progress had been made. This survey, which was 57 pages long, found 24 deficiencies. Def.'s Mot., Ex. E. The State agency forwarded its recommendation to HHS. On October 29, 1996, HHS informed plaintiff that it would be terminated from Medicare on November 16, 1996, that the daily civil penalties imposed back in August would continue until termination, that payment would continue to be denied for new admissions, and that payment for admissions prior to August 23, 1996, would continue for 30 days from November 16. Plaintiff filed the instant motions on Friday, November 15, 1996. An expedited administrative hearing is scheduled to begin on December 17, 1996, the day after the payments are scheduled to stop, before Administrative Law Judge Steven T. Kessel. *See Peninsula Plaza Health Care Center*, Docket No. C–97–063, Order and Notice of Hearing (HHS Nov. 20, 1996) ("ALJ Order"), Pl.'s Reply, Ex. 1.

Plaintiff alleges that it is now in full compliance but that the State agency and HHS refuse to grant a resurvey. Plaintiff argues that it should be given another survey to allow it to demonstrate its full compliance, that the prior surveys were biased, and that HHS has failed to follow its own rules and regulations. Plaintiff proposes a wide variety of remedies and asks the Court variously to rescind the termination or the effective date of the termination, to order HHS or the State agency to immediately revisit the facility and conduct a resurvey, and/or to enjoin the termination of plaintiff's Medicare payments permanently or at least until it has obtained a decision from the ALJ.

Defendants respond that this is a dispute over Medicare benefits that is governed exclusively by the review provisions of 42 U.S.C. § 405(g), that this Court lacks jurisdiction because plaintiff has failed to exhaust its administrative remedies, and that in any

case plaintiff is not entitled to preliminary injunctive relief.[1]

## I. STANDARD FOR INJUNCTIVE RELIEF

In deciding whether to grant emergency injunctive relief, the Court must consider (1) whether there is a substantial likelihood that plaintiff will succeed on the merits of the case, (2) whether plaintiff will suffer irreparable harm absent an injunction, (3) the harm to defendants or other interested parties, and (4) whether an injunction would be in the public interest or at least not be adverse to the public interest. *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir. 1989); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977).

Plaintiff is not required to prevail on each of these factors. Rather, under *Holiday Tours,* the factors must be viewed as a continuum—more of one factor compensating for less of another. The necessary level or degree of likelihood of success will vary according to the court's assessment of the other factors; when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d at 843; *see CityFed Financial Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C.Cir.1995) ("If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."); *Cuomo v. United States Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C.Cir.1985) ("A stay may be granted with either a high probability of success and some injury, or *vice versa.*").

## II. DISCUSSION

The Health Insurance for the Aged and Disabled program, popularly known as Medi-

care, was established by Title XVIII of the Social Security Act. 42 U.S.C. § 1395 *et seq.* This comprehensive statutory and regulatory scheme provides health care benefits for millions of elderly and disabled Americans. For many individuals it is their central resource in the battle against illness and economic hardship that may accompany old age. An important part of the Medicare scheme provides for reimbursement to skilled nursing home facilities that provide long term care for Medicare beneficiaries. The statute establishes elaborate requirements for these skilled nursing facilities and creates a survey and certification process that endeavors to enforce a high level of quality care. 42 U.S.C. § 1395i–3; *see also* 42 C.F.R. pt. 483 (governing health care provider eligibility); 42 C.F.R. pt. 488 (governing survey, certification and enforcement procedures). Of particular relevance to this litigation is 42 C.F.R. § 488.456(b), which states that a health care provider agreement may be terminated "if a facility is not in substantial compliance with the requirements of participation. . . ."

Judicial review of Medicare benefits decisions is governed by 42 U.S.C. § 405(g), which provides for judicial review of a "final decision" of the Secretary of HHS. *See* 42 U.S.C. § 1395cc(h). Section 405(g) generally precludes judicial review of benefits determinations until plaintiffs have exhausted their administrative remedies. *Heckler v. Ringer,* 466 U.S. 602, 613–14, 104 S.Ct. 2013, 2020–21, 80 L.Ed.2d 622 (1984); *National Kidney Patients Association v. Sullivan,* 958 F.2d 1127, 1130–31 (D.C.Cir.1992), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993); *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1082 (7th Cir.1982). HHS argues that Section 405(g) completely precludes review in this case because ALJ Kessel has not yet completed his review and has rendered no final decision, and the complaint

---

1. Plaintiff also relies on 28 U.S.C. § 1331, 28 U.S.C. § 1651 (the All Writs Act) and 28 U.S.C. § 1361 (mandamus), but defendants point out that Section 405(h) provides:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary

shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer of employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

therefore should be dismissed for failure to exhaust.

This is an unusual case. After the State agency conducted its second survey on October 9, 1996 and found some lingering and some newly identified deficiencies, plaintiff submitted a second plan of correction on October 25, explaining, according to plaintiff, that it had remedied all the deficiencies and was in full compliance. HHS did not officially respond to plaintiff's plan of correction, although it indicated in the papers it filed in this Court that in fact the agency has rejected the plan. *See* Declaration of Julie Sadovich ¶ 16 (Nov. 4, 1996), Def.'s Mot., Ex. B. Nevertheless, plaintiff urged HHS to perform yet another survey that it insists will confirm its claim that it is now in full compliance. *See* 42 C.F.R. § 488.110(*l*) ("[R]evisits are almost always necessary to ascertain whether the deficiencies have indeed been corrected."). Plaintiff also sought prompt administrative review of the termination decision. *See* 42 C.F.R. §§ 498.5, 498.40. And on November 20, ALJ Kessel took the unusual step of scheduling an expedited hearing to begin on December 17, 1996 and to last no more than three days. ALJ Order at 2.[2]

ALJ Kessel made clear in his Order that he felt obliged to schedule a hearing expeditiously "in view of the fact that [plaintiff's] participation in Medicare would be terminated on November 16, 1996." ALJ Order at 2. He went on to say:

I continue to find that it is imperative to give [plaintiff] a hearing expeditiously given the nature of the remedy that is being imposed by HCFA. [Plaintiff] persuasively argues that its federal funding will expire on or about December 16, 1996, and that it may be difficult or impossible for it to do business thereafter. The potential for damage to [plaintiff], should HCFA's determination to terminate [plaintiff's] participation be shown to be incorrect, is extraordinary, and outweighs any inconvenience that might result to employees of

the Department or to State agency employees by my scheduling a hearing on short notice.

ALJ Order at 2. The ALJ further pledged personally that "in order to assure that [plaintiff] receive [sic] due process, . . . I will do everything I can to reach a decision in this case as expeditiously as possible, . . . I will order post hearing briefs . . . on an expedited basis [and]. . . . I will at least consider the possibility of issuing a decision in this case from the bench. . . ." ALJ Order at 3.

Despite the ALJ's effort to reach a decision before plaintiff's funding terminates, plaintiff's funding will end on December 16, 1996, the day before the administrative hearing begins. As a result, plaintiff might well be forced to close its doors, and the residents might have to be transferred during the very period when the hearing and post-hearing briefing (assuming no decision from the bench) are taking place. This is just the sort of irreparable and unnecessary harm that carefully tailored, limited injunctive relief is intended to prevent. *See Lake County Rehabilitation Center, Inc. v. Shalala*, 854 F.Supp. 1329, 1336 (N.D.Ind.1994) (finding irreparable harm to nursing home where it might be forced to close). Or, as Judge Gasch described the harm in a similar case, "plaintiff's ability to render effective medical services to those in need would be significantly hampered by the suspension of regular payments to which plaintiff would otherwise be entitled." *Beverly Enterprises v. Mathews*, 432 F.Supp. 1073, 1079 (D.D.C. 1976). Both these courts recognized that the interests of health care providers and Medicare beneficiaries are closely intertwined. *See Lake County Rehabilitation Center, Inc. v. Shalala*, 854 F.Supp. at 1336; *Beverly Enterprises v. Mathews*, 432 F.Supp. at 1079.[3]

Of course, the Court does not know, nor would it be appropriate for it to determine, whether plaintiff is "otherwise entitled" to

---

2. Indeed, the ALJ originally set the hearing tentatively for December 3, 1996, but the government objected and the ALJ agreed that HCFA needed more time to prepare its case.

3. Defendants' argument that termination would not harm the plaintiff because it can continue to treat private patients is disingenuous. Defendants know full well that 120 of plaintiff's 130 residents are Medicare or Medicaid patients.

Medicare payments since this is an issue for the ALJ to decide. If the ALJ eventually concludes, however, as his Order signals he might, that plaintiff should not be terminated from the Medicare program, it may be too late for plaintiff's business to recover. More importantly, the residents will have already undergone an unnecessary and potentially destructive transfer from which many of them may sustain significant physical or psychological trauma. *See* HCFA Resident Census and Conditions of Residents, Pl.'s Reply, Ex. A.[4] As the ALJ himself noted: "The potential for damage to [plaintiff], should HCFA's determination to terminate [plaintiff's] participation be shown to be incorrect, is extraordinary...." ALJ Order at 2. There is a clear showing in this case of irreparable harm to the residents and the health care provider by virtue of the funding cut-off on December 16.

The injury that flows from this scheduling mismatch essentially arises because the ALJ has no authority to issue an injunction and therefore lacks the power to maintain the status quo pending his decision even for a few days. HHS also asserts that the Secretary herself lacks authority to extend the 30–day grace payment period because the regulations provide that payment is available only "up to" 30 days after termination. *See* 42 C.F.R. § 489.55.[5] The irony here is that the Medicare statute is designed to protect the interests of residents of such nursing facilities, and yet it is these very residents who will suffer the most if they are unnecessarily transferred because of a few days' gap in plaintiff's funding or because, as plaintiff's evidence suggests, there are no long term care facilities within 150 miles to which the residents could be transferred. Supplemental Declaration of George H. Eslinger (Supp. Eslinger Decl.) ¶ 4 (Nov. 20, 1996). Thus,

while the regulations contemplate a 30–day post-termination payment period precisely in order to smooth the transition for nursing home residents, and although ALJ Kessel has done everything in his power to minimize the possibility of unnecessary transitional upheaval, the accidents of timing may render these efforts for naught in the absence of a preliminary injunction.

It is true that plaintiff has little or no likelihood of success on the merits if "the merits" are understood as plaintiff's ability right now to obtain this Court's review of HHS's substantive decision to terminate *before* the ALJ has ruled. *See* 42 U.S.C. § 405(g) and (h); *Heckler v. Ringer*, 466 U.S. at 618, 104 S.Ct. at 2023. Plaintiff has, however, presented a sufficiently "substantial case" that it might well prevail on the merits *after* it has exhausted its administrative remedies. *See* Plaintiff's Second Plan of Correction, Exhibit 1 to Declaration of Patrick C. Clary (Nov. 20, 1996); Declaration of George H. Eslinger ¶ 3 (Nov. 13, 1996); Supp. Eslinger Decl. ¶¶ 2–3; Declaration of Veronica Russo ¶ 3 (Nov. 13, 1996). In view of the irreparable harm likely to be suffered by the residents, no more is required in order to obtain preliminary injunctive relief. *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d at 747; *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d at 974. Put another way,

... if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d at 844. Since

---

4. According to the HCFA resident census, of the 130 residents of Peninsula Plaza (120 of whom are *Medicaid or Medicare beneficiaries*), 100 are confined to a bed or chair all or most of the time while only 30 are independently ambulatory. At least 85 are frequently or occasionally incontinent, and at least 49 suffer from dementia or have some other documented psychiatric diagnosis. HCFA Resident Census at 1.

5. While the Court finds it hard to accept the proposition that the Secretary's broad discretion under the Medicare statute and regulations would not permit her to grant an extension in an individual case, counsel for HHS has unequivocally taken this position. Presumably he speaks for the Secretary, whose interpretation of her own regulations, even if somewhat implausible, is entitled to deference. *See Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314–15, 99 L.Ed.2d 515 (1988).

the entire purpose to be served by a preliminary injunction in this case is to permit the ALJ to engage in "more deliberative investigation," injunctive relief is appropriate.

The only harm proffered by defendants is the theoretical disruption caused by a court interfering with the administrative process and the Secretary's interest in expeditious provider termination procedures. But expedition with the least disruption is precisely what ALJ Kessel is trying to provide. The Court does not perceive any harm to the government in permitting the ALJ to reach promptly the merits of a live controversy rather than forcing him to wait until after plaintiff is financially dysfunctional and the residents have already been moved. Indeed, an injunction will further the significant public interest both in the smooth functioning of the administrative process and in protecting the residents' interests, as suggested by the purposes of the Medicare statute. "[B]oth Congress and the Secretary have recognized the potential harm [in cutting off provider funding] and the compelling public interest in providing timely and uninterrupted health care funding." *Beverly Enterprises v. Mathews*, 432 F.Supp. at 1079. The ALJ has taken extraordinary steps to decide plaintiff's challenge as soon as possible in order to minimize disruption to the services provided to the residents. In view of the ALJ's determinations in this case, the interests of the residents in not being transferred unnecessarily, and the public interest in the smooth and efficient operation of the Medicare system, the Court concludes that funding for prior admissions should continue for the very brief period of time needed to permit ALJ Kessel to make his decision on the merits.

The Court rejects defendants' argument that any harm to the residents is irrelevant to the "irreparable harm" determination because they are not formally before the Court. Since the four-pronged test for emergency injunctive relief is to be treated as a fact-based continuum and not as four formalistic, hermetically sealed categories, *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d at 844, in deciding whether to grant or withhold injunctive relief the Court must consider the potential harm to the residents, to the plaintiff and to the Medicare system as a whole, and not whether that harm is placed definitionally in the "irreparable harm" box or in the "public interest" box. The Court's equitable power to fashion injunctive relief is meant precisely to permit the Court to maintain the status quo pending an administrative decision such as this one, particularly where the failure to do so may result in the eviction of these elderly and infirm residents only days before the ALJ makes his decision. Otherwise, the administrative process would be rendered hollow and allow significant and unnecessary injury to the very individuals the statute is designed to protect. A brief stay of the termination of plaintiff's funds will facilitate exhaustion, not hinder it; it neither interferes with nor circumvents the administrative process. Rather, it will maintain the status quo and permit ALJ Kessel to do what he cannot do alone, namely, to rule on the merits of whether termination is appropriate before the issue becomes academic as a practical matter.[6]

With the decision to grant very limited injunctive relief, the Court expressly rejects plaintiff's principal contention that the administrative process provided by HHS and

---

**6.** In a post-hearing submission, defendants brought to the Court's attention the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), noting the holding that residents of a Medicare facility lack standing to challenge the decertification of that facility and, particularly, Justice Blackmun's concurring opinion questioning the existence of the phenomenon known as "transfer trauma." 447 U.S. at 803–05 & n. 13, 100 S.Ct. at 2484–86 & n. 13 (Blackmun, J., concurring in the Judgment). The Court notes, however, that Justice Stevens' majority opinion expressly recognized "that such

a revocation [of a nursing home's certification] may be harmful to some patients." *Id.* at 775, 100 S.Ct. at 2470. "Some may have difficulty locating other homes they consider suitable or may suffer both emotional and physical harm as a result of the disruption associated with the move." *Id.* at 787, 100 S.Ct. at 2476. Like Justice Stevens, the Court "assumes for purposes of this discussion that there is a risk that some residents may encounter severe emotional and physical hardship as a result of a transfer." *Id.* at 784 n. 16, 100 S.Ct. at 2475 n. 16; *see* Supplemental Declaration of Veronica J. Russo ¶ 3 (Nov. 22, 1996).

the State of California somehow has been irregular or biased. The administrative process is entitled to a presumption of regularity, and plaintiff has provided no persuasive evidence that it is not being treated fairly by the State or federal government. The Court also denies the wide ranging relief sought by plaintiff, namely to rescind the termination, to permanently enjoin the withholding of funds and/or to order a resurvey, a matter clearly within the discretion of the Secretary. *See* 42 U.S.C. § 1395i-3(g); 42 C.F.R. §§ 488.110, 488.308. The substantive issues of plaintiff's eligibility and the sufficiency of the procedures followed are properly to be examined by the ALJ during the December 17 hearing, and the Court will not usurp the ALJ's decision making authority in this arena. *See Heckler v. Ringer,* 466 U.S. at 615, 104 S.Ct. at 2021–22. Rather, the Court finds that very limited injunctive relief will best serve the purposes of the administrative process given the unusual circumstances presented by this case.

ALJ Kessel has set an accelerated hearing and post-hearing schedule with time and page limitations designed to speed up the process as much as possible. In that spirit, the Court will enter an order preserving plaintiff's funding for prior admissions only until ALJ Kessel renders his decision as contemplated by his own Order *or* until January 15, 1997, whichever comes earlier. The January 15 cutoff date ensures that plaintiff will have no incentive to stall the proceedings while its funding remains protected by Court order. The stay will end upon the entry of Judge Kessel's decision resulting from the December 17 hearing or on January 15; it will not apply to any further appellate or any other proceedings before Judge Kessel or any other tribunal, administrative or judicial, initiated by any party.

An Order consistent with this Opinion is entered this same day.

SO ORDERED.

### ORDER

This case is before the Court on plaintiff's motion for a temporary restraining order and a preliminary injunction and defendants' motion to dismiss. Having carefully considered all of the briefs, affidavits and declarations, the arguments of counsel and the entire record in this case, and for the reasons stated in the accompanying Opinion issued this same day, it is hereby

ORDERED that plaintiff's motion for a temporary restraining order is DENIED as moot; it is

FURTHER ORDERED that plaintiff's motion for a preliminary injunction is GRANTED in part and DENIED in part. The termination of Medicare and Medicaid payments to plaintiff on behalf of residents of Peninsula Plaza who were admitted prior to August 23, 1996, is preliminarily enjoined until Administrative Law Judge Steven T. Kessel renders a decision following the hearing now scheduled to begin on December 17, 1996 *or* until January 15, 1997, whichever comes earlier; and it is

FURTHER ORDERED that defendants' motion to dismiss the complaint is DENIED.

SO ORDERED.