**LIBBIE REHABILITATION CENTER, INC., Plaintiff,**

v.

**Donna E. SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.**

No. CIV. A. 98–2232(SS).

United States District Court, District of Columbia.

Oct. 30, 1998.

Joseph L. Bianculli, Bianculli & Hoffman, Arlington, VA, for Libbie Rehabilitation Center, Inc., plaintiffs.

Mark E. Nagle, U.S. Attorney's Office, Washington, DC, Donald Hugh Romano, Office of the General Counsel, U.S. Dept. of Health and Human Services, Baltimore, MD, for Donna E. Shalala, Secretary of Health and Human Services, federal defendants.

## OPINION

SPORKIN, District Judge.

On September 18, 1998 plaintiff, Libbie Rehabilitation Center, Inc. ("Libbie" or "the Facility"), filed this action seeking a temporary restraining order to enjoin defendant, Donna E. Shalala. Secretary of the United States Department of Health and Human Services ("the Secretary") from terminating Libbie from the federal Medicare and the joint federal-state Medicaid Acts based on certain deficiencies which the Secretary found at Libbie.

This Court held a hearing on September 25, 1998 and the parties subsequently drafted a stipulated Order which the Court signed on October 6, 1998. The Order, *inter alia*, temporarily restrained the Health Care Financing Administration ("HCFA" or "the Government"), a Division of the Department of Health and Human Services, from terminating Libbie's Provider Agreement and provided for the appointment of a temporary manager to operate the Facility.[1]

On October 10, 1998, the Virginia Department of Medical Assistance Services ("DMAS"), which is responsible for administration of the Virginia Medicaid Program, appointed Douglas Wright of Agape Healthcare, Inc. as the temporary manager and this Court approved that appointment. Mr. Wright reported to this Court on October 14, 1998 that the Facility would be ready for a resurvey within a short time. On October 13, 1998 Libbie filed a Motion to Convert the Temporary Restraining Order Into a Preliminary Injunction. The Government subsequently filed a Motion to Dismiss. The Court conducted a hearing on the motions on October 27, 1998. After hearing arguments from both parties and testimony from five witnesses, and after reviewing the papers, including fifteen exhibits submitted by the plaintiff and eleven submitted by the defendant, the Court issues the following findings of fact and conclusions of law.

### I. Background

Libbie owns and operates a 195–bed skilled nursing facility known as "Libbie

---

1. Specifically, the Order: (1) temporarily restrained the Health Care Financing Administration ("HCFA") from terminating Libbie's Provider Agreement; (2) provided for the appointment of a temporary manager by the Virginia Department of Medical Assistance Services ("DMAS"), with such appointment subject to approval by the Court; (3) provided for the salary of the temporary manager to be paid by Libbie or its corporate owner; (4) provided that the temporary manager would report on the condition of the facility and the time period within which it would be ready for resurvey within 10 days; (5) provided that the temporary manager would remain at the Facility until the Court is satisfied that Libbie would remain in compliance with HCFA's regulatory standards; and (6) provided for the Court to retain jurisdiction over the matter.

Convalescent Center" located in Richmond, Virginia. The Facility is licensed by the State of Virginia. Libbie is a wholly-owned subsidiary of Retirement Care Associates, Inc., which in turn, is a wholly-owned subsidiary of SunRise Healthcare Group, Inc. ("SunRise"), a New York Stock Exchange listed corporation organized and existing under the laws of Delaware. SunRise's principal place of business is in Albuquerque, New Mexico. SunRise has managed Libbie since mid–1997. In July 1998 SunRise acquired Retirement Care Associates, Libbie's parent company. Libbie has received payments from the Medicare program since 1995 and has received payments from the Medicaid program for more than 20 years.

Facilities that receive payments from the Medicare and Medicaid programs must be certified pursuant to federal regulations set forth in 42 C.F.R. §§ 483.1 et seq. (Medicare) and 42 C.F.R. §§ 442.1 et seq. (Medicaid). The facilities are surveyed periodically by state agencies which make findings and recommendations to the Secretary regarding each facility's compliance with the regulations. The Virginia Department of Health ("VDH") is the designated state survey agency for the state of Virginia.

Libbie had a mixed record of compliance over the years, but after SunRise took over management of the facility in 1997, VDH found no deficiencies at its regular survey in December 1997. Shortly thereafter, in February 1998, VDH received a complaint about Libbie and a "complaint survey team" conducted a "complaint survey," during which it found a number of deficiencies and found that Libbie's residents were in "immediate jeopardy" and were receiving a "substandard quality of care." Libbie corrected certain of its problems and VDH withdrew the "immediate jeopardy" finding.

Following the February survey Libbie submitted a plan of correction and was re-inspected in May 1998. The survey team found that some of the previously cited deficiencies had been corrected, some had not and some new deficiencies had arisen. The new deficiencies were not deemed to pose "immediate jeopardy" to the residents or to constitute a "substandard quality of care."

On June 22, 1998 Claudette V. Campbell, the Associate Regional Administrator of HCFA informed Libbie that if it had not regained "substantial compliance" by September 3, 1998, the Secretary would impose various remedies against it, including possible substantial civil penalties, a ban on new admissions, and "termination" (the termination date was later extended to September 23, 1998). Following the May survey Libbie submitted another plan of correction and in August the VDH team conducted another follow-up survey. The team made the same findings that it had made after the May survey (i .e., some deficiencies had been corrected, some remained and some new ones had arisen).

On August 25, 1998 Libbie submitted additional information to the Secretary and VDH to demonstrate compliance and requested a follow-up survey. However, on September 10, 1998 the Secretary informed Libbie that no further surveys would be conducted and that the Facility would be terminated as of September 28, 1998. Relocation of Libbie's residents was scheduled to begin on September 16, 1998, but was postponed pending resolution of Libbie's motion for a temporary restraining order.

## II. Discussion

### A. Jurisdiction

Libbie appealed the results of the August survey and requested an expedited administrative hearing to challenge HCFA's findings of non-compliance. At the October 27, 1998 Court proceeding, counsel informed the Court that the Administrative Law Judge had scheduled the administrative hearing for January.

■ The Medicare and Medicaid Acts contain requirements that claimants must pursue their administrative remedies before seeking judicial review, 42 U.S.C. §§ 405(g) and (h). While Libbie has not yet had its administrative hearing, this Court finds that it has jurisdiction over this cause of action because a claim challenging the Secretary's authority for failure to adhere to the specific requirements of the Medicare Act in ordering a "termination" of benefit payments is

"entirely collateral" to a claim for benefits and, therefore, falls outside the jurisdiction restrictions of §§ 405(g) and 405(h). *See International Long Term Care, Inc. v. Shalala,* 947 F.Supp. 15 (D.D.C.1996). As found by Judge Friedman in a similar case:

> Despite the ALJ's effort to reach a decision before plaintiff's funding terminates, plaintiff's funding will end... the day before the administrative hearing begins. As a result, plaintiff might well be forced to close its doors, and the residents might have to be transferred during the very period when the hearing and post-hearing briefing... are taking place. This is just the sort of irreparable harm that carefully tailored, limited injunctive relief is intended to prevent.

*Id.,* 947 F.Supp. at 17–19.

### B. Standards for A Preliminary Injunction

■ Under the law of this Circuit, a court considering whether to issue a preliminary injunction must consider the following factors:

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its [case]? ...(2) Has the petitioner shown that without such relief, it will be irreparably injured? ...(3) Would the issuance of a stay substantially harm other parties interested in the proceedings? ...(4) Where lies the public interest?

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977); *accord Sea Container's Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989). After consideration of the above factors this Court concludes that it is in the public interest, and in particular it is in the interests of the residents of Libbie, that a preliminary injunction issue.

### C. Likelihood of Success

Libbie states that nursing facilities may be "terminated" only where conditions at the facility pose a danger of "immediate jeopardy to resident health and safety." Thus, Libbie contends that by terminating Libbie in the absence of a finding of "immediate jeopardy"

the Secretary has violated the Medicare Act, 42 U.S.C. § 1395i–3(h)(2); the Medicaid Act, 42 U.S.C. § 1396(h)(3); the due process clause of the Fifth Amendment; the Administrative Procedure Act, 5 U.S.C. §§ 553 *et seq.* and 706; and that her action was "contrary to law, arbitrary, capricious and an abuse of discretion in violation of 5 U.S.C. § 706(2)."

The Medicare and Medicaid Acts authorize the Secretary to impose a variety of remedies and/or sanctions against offending facilities. Prior to 1987 the only remedies were "termination" or a ban on payment on new admissions. While the Medicare Act formerly permitted termination in "non-jeopardy" cases, 42 U.S.C. § 1395cc(f), that provision is no longer in force. In 1987 Congress enacted legislation to add a greater variety of remedies to the Medicare and Medicaid Acts, including, among others, civil money penalties, imposition of independent temporary managers and ordering adoption of plans of correction. The 1987 legislation establishes categories of non-compliance and provides a number of possible remedies for the Secretary to choose from based on the category in which the facility is placed.

Libbie states 42 U.S.C. § 1395i–3(h)(2) authorizes termination only in those cases that pose "immediate jeopardy" to resident health and safety. However, the Secretary has promulgated regulations which allow her to terminate any facility that is not in "substantial compliance," even if there is no immediate jeopardy.

Three courts have addressed the specific question presented in this case. Two of those courts have rejected the Secretary's position. *See Mountainview Nursing and Rehabilitation Center, Inc. v. Department of Health and Human Services,* 93 CV 1692 (M.D.Pa. Nov. 18, 1993) (Section 1395i–3(h)(2) "bestows termination authority upon the Secretary only when there had been a finding of immediate jeopardy to the residents.") (interpreting Medicare and Medicaid provisions); *Claridge House, Inc. v. U.S. Department of Health and Human Services,* 795 F.Supp. 1393 (S.D.Ohio 1991) ("The Court must conclude that the Secretary is not authorized to terminate a nursing facility

from the Medicaid Program absent a finding that the facility's deficiencies immediately jeopardize the health or safety of its residents.") (interpreting Medicaid provision). One court has agreed with the Secretary's position. *See Lake County Rehabilitation Center, Inc. v. Shalala,* 854 F.Supp. 1329 (N.D.Ind.1994) (holding that Congress intended to provide Secretary with remedy of termination).

Because it is unnecessary to a resolution of this motion this Court declines to reach the power to "terminate" issue. At the October 27, 1998 hearing counsel for the Government informed the Court that the State of Virginia had recommended that Libbie be terminated. *See* Letter of Claudette Campbell, Govt. Ex. 1. While acknowledging that is so, counsel for Virginia represented at the hearing that the State is now prepared to resurvey Libbie and that the letter recommending termination would be rescinded if Libbie was found to be in compliance. Upon questioning by the Court counsel for the Government conceded that the normal policy of the Government is to follow the State's recommendation. Because the temporary manager, Mr. Wright, indicated to the Court at the hearing that the Facility is now in substantial compliance and ready for a resurvey, the Court concludes that regardless of the legal question presented, there is a strong likelihood that on resurvey Libbie would be found to be in compliance and reinstated into the program.

### D. *Irreparable Injury, Harm to Other Parties and the Public Interest*

Regarding the remaining issues a court must consider in making a preliminary injunction determination, this Court concludes that all three weigh in favor of Libbie. Should the Government untimely and inappropriately terminate Libbie from the Medicare and Medicaid programs, the likelihood of irreparable injury in dislocating the residents of Libbie is clear and strongly influences this Court's conclusion that the preliminary injunction should issue.

Mr. Wright testified that he had approximately 15 conversations with Libbie residents and with family members of residents who were concerned and anxious about the possibility of having to relocate. Barbara Sondergren, the Vice–President of Health Services at SunRise testified about a phenomenon known as "transfer trauma." In her affidavit Ms. Sondergren stated that "[i]t is my professional opinion, based on my experience, that these residents will experience serious harm, physically and mentally, if forced to leave the facility against their will. It is very likely that many residents will experience shock and never recover to their physical or mental potential." Pltf. Ex. 13.

David A. Israel, PhD., a licensed clinical psychologist who has been in private practice for 28 years and currently treats approximately 40 to 50 Libbie residents, also testified about the effects of transfer trauma and the likelihood that it would affect a substantial portion of the Libbie residents should they be required to relocate. In his affidavit Dr. Israel states:

> In my professional experience, the physical and emotional condition of confused or demented residents rapidly declines when they are transferred against their will... These residents are often devastated when forced to leave "home" and "family" against their will. Residents' physical conditions often decline, and in some instances the residents simply give up and die.

*See* Ex. 2 to Pltf's Motion for Preliminary Injunction. Libbie also submitted letters from numerous residents and family members concerned about the trauma of a potential transfer.

The Court concludes that without this preliminary injunction irreparable harm to the residents of Libbie is likely and, accordingly, that it is in the public interest that such an injunction should issue.

The Court also concludes that the harm to other parties, should the preliminary injunction issue is minimal to non-existent. The interest of the Government in administering the Medicare and Medicaid programs is to ensure that the recipients of benefits are receiving adequate treatment and care. It is in the best interest of no one to incur the risks inherent in the relocation of the Libbie residents unless it is necessary. Therefore, it is also in the best interest of the Govern-

ment where an "immediate jeopardy" finding has not been made, that the Facility be brought into compliance with the applicable regulations, thereby obviating the need to relocate the residents.

Under no circumstances would this Court interfere with the Secretary's action if it found that the residents' interests would be adversely affected by remaining at the Facility. The Court gives a great deal of weight to the testimony of Douglas Wright, the temporary manager placed in charge by the State of Virginia. Mr. Wright testified that in his opinion the Facility is providing proper services to the residents and is presently in compliance with all applicable requirements. This being the case, it would be an absolutely foolish and indeed a cruel act to relocate these citizens to facilities that might be located as far as 100 miles away from their loved ones.[2]

### III. Conclusion

For the reasons set forth above this Court concludes that it has the jurisdiction to hear the plaintiff's motion and that the plaintiff has met the requirements for the issuance of a preliminary injunction. Accordingly, the motion of Libbie to convert the temporary restraining order into a preliminary injunction is granted, and the motion of the Secretary to dismiss the case is denied. An appropriate Order is attached.

### ORDER

Upon consideration of Plaintiff's Motion to Convert the Temporary Restraining Order into a Preliminary Injunction and for the reasons set forth in the attached Opinion, it is hereby **ORDERED** that the Plaintiff's motion is **GRANTED**.

Because Plaintiff has shown: (1) a likelihood of success; (2) the potential for irreparable injury to the residents of Libbie should the preliminary injunction not issue; (3) that the defendant will not be harmed by the issuance of a preliminary injunction; and (4) that the issuance of a preliminary injunction is in the public interest, the defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with the defendant who receive actual notice of the Order by personal service or otherwise are hereby **ENJOINED** from terminating the payment of federal Medicare and joint federal-state Medicaid payments to the Libbie Rehabilitation Center in Richmond, Virginia until further order of this Court.

The Virginia Department of Health, Department of Medical Assistance Services, shall conduct a survey of Libbie and the parties shall report to the Court within 30 days from the October 27, 1998 hearing: (1) the results of the survey; (2) whether the State of Virginia's recommendation of termination has been rescinded; and (3) whether the Defendant intends to follow the new recommendation of the State of Virginia.

Upon consideration of Defendant's Motion to Dismiss, and for the reasons set forth in the attached Opinion, it is hereby **ORDERED** that Defendant's motion is **DENIED.**

---

2. The testimony was that because of the large number of residents and the lack of room at these skilled nursing facilities, that some residents would have to be moved up to 100 miles away from their current home. *See* Affidavit of Karen Lawson, Dft. Ex. 6. *See also* transcript of October 27, 1998 hearing.